TRANSAMERICA COMMERICAL FINANCE CORPORATION,
APPELLEE, V. DENNIS ROCHFORD, APPELLANT.
509 N.W.2d 214

Filed December 30, 1993.    No. S-91-806.

Eugene L. Hillman, of McCormack, Cooney, Mooney, Hillman & Elder, for appellant.

Robert V. Ginn, Richard A. Drews, and MaryBeth Frankman, of Brashear & Ginn, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

Appellee, Transamerica Commercial Finance Corporation (Transamerica), brought this action against appellant, Dennis Rochford, on a personal guaranty executed by Rochford for the indebtedness of Mission Television and Appliance, Inc., doing business as Paramount Television and Appliance (Paramount), under the provisions of a security agreement. Rochford appeals the order of the district court in which the court overruled his motion for summary judgment, sustained Transamerica's motion for summary judgment, and entered a judgment against him in the amount of $248,714.15.

A summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and that the moving party is entitled to judgment as a matter of law. *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993); *In re Estate of Wells*, 243 Neb. 152, 497 N.W.2d 683 (1993).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Douglas Cty. Bank & Trust v. Stamper, ante* p. 226, 505 N.W.2d 693 (1993); *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

On February 28, 1989, Transamerica and Paramount entered into an inventory security agreement and power of attorney. Under the terms of that agreement, Transamerica agreed to extend credit to Paramount for the purchase of inventory, and Paramount granted to Transamerica a security interest in all of its collateral. On that same date, Rochford, president of Paramount, executed a personal guaranty, absolute in form, to secure the debt of Paramount to Transamerica. Paramount defaulted on the agreement by failing to make scheduled

liquidation payments to Transamerica in the amounts of $89,815.76 on May 25, 1990, and $78,745.25 on June 10, 1990. Pursuant to the terms of the agreement, Transamerica elected to terminate the agreement and declare the entire amount of indebtedness from Paramount to be immediately due and payable. As of June 25, 1990, the total amount of indebtedness was $442,257.52.

On August 10, 1990, Transamerica assigned to AT&T Commercial Finance Corporation (AT&T) that

> certain "Inventory Security Agreement and Power of Attorney" dated February 28, 1989 between Transamerica and Mission Television and Appliance, Inc. d/b/a Paramount Television and Appliance (hereinafter "Mission"), any and all debt incurred by Mission pursuant to that agreement, any other debt owed by Mission to Transamerica and on any other security agreements and any invoices and billing statements or documents created pursuant thereto, but the debt and instruments assigned pursuant to this paragraph shall only be assigned up to the amount of $350,000.00 in debt owed by Mission to Transamerica.

Transamerica further assigned to AT&T a security interest in and to "[a]ll inventory of whatever kind or nature in the possession, ownership or control of Mission Television and Appliance, Inc." As consideration for the assignment, AT&T paid Transamerica $175,092.88, which was determined to be the full wholesale value of Transamerica's interest in Paramount's inventory, plus an additional $50,000, for a total of $225,092.88. Transamerica did not notify Rochford of its intention to assign the security interest to AT&T.

Subsequent to the assignment, Transamerica initiated this action against Rochford under his personal guaranty. The district court entered judgment against Rochford in the amount of $217,751.66, which would appear to be the approximate difference between the balance owed by Paramount to Transamerica and the $225,092.88 which was the consideration for the assignment from Transamerica to AT&T, plus $30,962.50 accrued interest. On appeal, Rochford asserts that the district court erred in denying his motion for summary

judgment and in granting Transamerica's motion for summary judgment.

It is apparent that Transamerica brought this action for recovery under the terms of the guaranty agreement. However, Rochford alleges and argues that this was an action for a deficiency judgment under the provisions of article 9 of the Nebraska Uniform Commercial Code on secured transactions. Part 5 of article 9 deals with the remedies available under the code to a secured party upon the default of the debtor. If the collateral is not in the possession of the secured party, the secured party has the right to repossess under Neb. U.C.C. § 9-503 (Reissue 1992). The secured party may then propose to retain the collateral in satisfaction of the debt under Neb. U.C.C. § 9-505(2) (Reissue 1992) or sell, lease, or otherwise dispose of the collateral pursuant to Neb. U.C.C. § 9-504 (Reissue 1980). Section 9-504 provides, in pertinent part:

(1) A secured party after default may sell, lease or *otherwise dispose* of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .

(2) If the security interest secured an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, *the debtor is liable for any deficiency.* . . .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor*, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

(Emphasis supplied.) As noted above, the debtor is ordinarily

entitled to notice prior to disposition of the collateral, and unless otherwise agreed, the debtor will be liable for any deficiency following the disposition.

One who guarantees the payment of another's debt is a debtor entitled to notice pursuant to § 9-504(3). *Bank of Burwell v. Kelley*, 233 Neb. 396, 445 N.W.2d 871 (1989); *American Honda Finance Corp. v. Bennett*, 232 Neb. 21, 439 N.W.2d 459 (1989).

Rochford asserts that he was entitled to notice of the "private sale" which was termed an "assignment" by Transamerica. However, as noted above, Transamerica argues that there was no sale or other disposition under § 9-504 because that section addresses the disposition of collateral, not the assignment of a security interest in the collateral.

Rochford does not refer us to any cases which would directly support the assertion that an assignment is a disposition under § 9-504. However, he argues that the transfer of title to the collateral is not essential for finding a disposition and cites cases from other jurisdictions to support that contention. For example, in *First City Bank—Farmer's Branch, Texas v. Guex*, 677 S.W.2d 25 (Tex. 1984), the debtor brought an action against the secured party bank, alleging wrongful disposition of his collateral, a boat and trailer. The bank had released the collateral to a third party, one Kaprielian, who had paid past due installments and signed a promissory note for the unpaid balance of the debt. When the debtor attempted to pay off the loan, he was told that the boat had been sold, although the sale had not been completed. The bank subsequently returned the promissory note to Kaprielian and advised the debtor he could recover the collateral from Kaprielian. When the collateral was recovered 14 months later, it was in a damaged condition. The bank argued that no disposition had taken place because there had been no sale or transfer of title of the collateral to Kaprielian. The court rejected this argument, stating:

> The transactions between the bank and Kaprielian constituted proceedings on any terms. Kaprielian took possession of the boat. The bank took her promissory note and received her check for past-due installments, repossession charges, and late charges. Whether title to

the boat and trailer were vested in Kaprielian is immaterial. A disposition occurred. Our conclusion is again reinforced by the language of the statute itself. Had the legislature intended the meaning urged by the bank, they would have omitted "or otherwise dispose" after "sell" and "lease."

*Id.* at 28.

However in *Guex*, the collateral had been repossessed, and it was necessary to invoke the provisions of the code in order to protect the debtor's interests in the collateral. Although Rochford here contends that Transamerica "replevied the inventory and then sold its right, title and interest to the inventory while it remained in place," brief for appellant at 4, Transamerica asserts that while a replevin action was initiated against Paramount, that proceeding was dismissed and no writ of replevin was obtained. There is nothing in the record to indicate that the collateral at issue has been repossessed, and *Guex* can be distinguished on that basis.

Further, § 9-504(4), which deals with the rights of a subsequent purchaser of collateral, is also instructive as to the effect of a disposition: "When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, *discharges the security interest* under which it is made and any security interest or lien subordinate thereto." (Emphasis supplied.) Here, there has been no repossession or disposition of the collateral itself, and the security interest has not been discharged, but has only been assigned to a third party. An assignment of a debt and of an interest in collateral under a security interest agreement is not a disposition of collateral as contemplated by § 9-504(1); that section refers to the fact that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the *collateral*." (Emphasis supplied.)

Here the collateral was not disposed of, but, rather, the creditor's security interest in the collateral and debt was assigned to the extent provided in the agreement between Transamerica and AT&T.

"An assignment of either a fractional part of a single and entire right against an obligor, or of a stated amount from

such a right, is operative as to that part or amount to the same extent and in the same manner as if the part had been a separate right, subject to the limitation that if the obligor has not contracted to make such a partial performance no legal proceeding can be maintained by such an *assignee* against the *obligor over his objection*, unless all persons having collectively a right to the entire performance are enjoined in the proceeding."

(Emphasis supplied.) *First Nat. Bank of Wayne v. Gross Real Estate Co.*, 162 Neb. 343, 350, 75 N.W.2d 704, 708 (1956), quoting Restatement of Contracts § 156 (1932).

Under an absolute guaranty of payment, which was the case here, the guarantor undertakes that if the obligation is not paid when due, the guarantor will pay it according to its terms without regard to whether the guaranteed person has exhausted all remedies against the primary debtor. See *Nogg Bros. Paper Co. v. Bickels*, 233 Neb. 561, 446 N.W.2d 729 (1989).

Therefore, it is apparent that Transamerica was entitled to bring this action against Rochford, the guarantor, for the balance remaining due to Transamerica. We then turn to whether the granting of summary judgment in favor of Transamerica was justified.

As recently as *Overmier v. Parks*, 242 Neb. 458, 460-61, 495 N.W.2d 620, 622 (1993), we said:

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party.

The fact that Transamerica and Paramount entered into a security agreement and power of attorney whereby Transamerica agreed to extend credit to Paramount and that Rochford agreed absolutely to guarantee prompt payment of every indebtedness incurred pursuant to that security

agreement exists without contradiction. According to the affidavit of Kyle A. Larsen, Omaha branch manager for Transamerica, Paramount defaulted on scheduled liquidation payments to Transamerica in the amounts of $89,815.76 on May 25, 1990, and $78,745.25 on June 10, 1990. Rochford agreed that those payments were not made. As stated in its petition, Transamerica elected to terminate the agreement and declare the entire indebtedness due and payable. By affidavit, Larsen stated that the total amount of the indebtedness as of June 25, 1990, was $442,257.52. There is no evidence in the record to the contrary except Rochford's denial that that figure was correct. However, in his deposition, Rochford agreed that the debt to Transamerica was approximately $440,000. Furthermore, in Larsen's affidavit, it was stated that Transamerica assigned a portion of Paramount's debt to AT&T; a copy of the assignment is attached to the affidavit. The assignment recites that the "debt and instruments assigned" shall only be assigned to the amount of $350,000, although there is an additional paragraph which states that "[u]pon request from Transamerica, AT&T shall assign back to Transamerica up to $124,908.00 in [Paramount's] debt." However, nowhere in the record is there any indication that any request for reassignment of any portion of the debt was requested. It is quite apparent that to arrive at the amount due according to the judgment of $217,751.66 plus interest entered by the trial court, that court would have had to assume that the total amount of the reassignment was made. This it could not do.

With the exception just noted, the facts in the record support the conclusions arrived at above. Rochford offered no evidence to contradict such findings. Rochford did allege in his answer that the execution of the assignment "effectively" released the principal debt, thereby releasing Rochford, and that the collateral was disposed of without notice contrary to § 9-504, thereby barring Transamerica from obtaining a "deficiency" judgment. None of this is supported by anything in the record, and the conclusionary allegations which are made are not supported in law.

We therefore find that there is no dispute but that as of June

25, 1990, there remained due on the underlying debt the sum of $442,257.52. Only $350,000 of that debt was assigned, leaving $92,257.52 of debt held by Transamerica for which Rochford was liable under his guaranty as of June 25, 1990. From that day forward to the date of judgment, July 29, 1991, Transamerica is entitled to interest at the rate provided by Neb. Rev. Stat. § 45-102 (Reissue 1988) of 6 percent per annum, there being no specific rate contracted for by the parties appearing in the record. This amounts to $6,133.28. Accordingly, as a matter of law, Transamerica is entitled to summary judgment against Rochford in the total sum of $98,390.80. The judgment of the district court is modified accordingly, and as modified, is affirmed.

AFFIRMED AS MODIFIED.

SHANAHAN, J., not participating.