KEITH E. RODEHORST, APPELLANT, V.
LORI A. GARTNER, APPELLEE.
669 N.W.2d 679

Filed October 10, 2003. Nos. S-02-795, S-02-796.

Michael R. Snyder, of Snyder & Hilliard, for appellant.

Bradley D. Holbrook, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Keith E. Rodehorst brought separate actions against Lori A. Gartner (Gartner) seeking contribution for payments which Rodehorst made to Exchange Bank (the Bank) on two promissory notes following default by Premiere Motors, L.L.C. (Premiere). The district court sustained Gartner's demurrers and dismissed the actions, concluding as a matter of law that Rodehorst had no right to seek contribution from Gartner. Rodehorst perfected timely appeals in each case. The appeals were moved to our

docket pursuant to Neb. Rev. Stat. § 24-1106(3) (Reissue 1995) and consolidated for oral argument and disposition.

## FACTS

We summarize here the factual allegations in Rodehorst's operative amended petitions, which, for purposes of reviewing rulings on a demurrer, we are required to accept as true. See *Stahlecker v. Ford Motor Co., ante* p. 601, 667 N.W.2d 244 (2003). On or about April 15, 1998, the Bank made an operating loan to Premiere in the amount of $150,000. In exchange, Premiere gave the Bank promissory note No. 23345, in the principal sum of $150,010. The note was signed by Premiere's members, Jonathan D. Coleman, Philip S. Mack, and Richard R. Gartner, and cosigned by the members' wives, Heidi J. Coleman, Dana M. Mack, and Gartner. The terms of the note provided in part:

> Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. . . . All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

Also on April 15, seven individuals, including both Rodehorst and Gartner, signed and delivered to the Bank personal guaranties for the indebtedness of Premiere. The guaranties were identical and provided in relevant part:

> CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, [Guarantor] absolutely and unconditionally guarantees and promises to pay to EXCHANGE BANK ("Lender") or its order . . . the indebtedness . . . of PREMIERE MOTORS, L.L.C. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. . . .
>
> . . . .
>
> Indebtedness. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and

indebtedness to Lender, now existing or hereinafter incurred or created . . . .

. . . .

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender . . . (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor . . . .

(Emphasis omitted.)

On July 7, 1998, the Bank loaned Premiere an additional amount of $60,478.71, in exchange for promissory note No. 23569. This note was signed only by Philip Mack in his capacity as "manager" of Premiere. On August 11, 1998, Premiere gave the Bank promissory note No. 23661, in the sum of $250,000, in order to renew and extend notes Nos. 23345 and 23569. Promissory note No. 23661 was signed by Premiere's three members.

In August 1999, during a routine inspection of Premiere's inventory, the Bank discovered that inventory valued at approximately $100,000 could not be accounted for. Therefore, on August 16, the Bank reduced Premiere's $250,000 operating line, represented by promissory note No. 23661, to $150,000 by transferring $100,000 of the indebtedness to a term note, promissory note No. 24642, and issuing promissory note No. 24641 in the principal sum of $150,000 as a partial renewal of the operating line. Promissory notes Nos. 24641 and 24642 were signed by members Jonathan Coleman and Richard Gartner and cosigned by Rodehorst. Promissory note No. 24641 was renewed by note No. 25822, given to the Bank on August 25, 2000. This note was signed by member Jonathan Coleman and cosigned by Rodehorst.

Premiere defaulted on the payment of promissory notes Nos. 24642 and 25822 by failing to make principal and interest

payments. Despite the Bank's demand for payment on the notes, Premiere, its members, and their wives (who were guarantors) failed and refused to pay the notes. On December 3, 2001, Rodehorst paid the amount then due, $87,787.37 principal and $2,490.51 interest, to the Bank in full satisfaction of promissory note No. 24642. On that same date, Rodehorst paid the amount due, $121,869.94, on promissory note No. 25822 and the Bank assigned that note to Rodehorst, who is now its owner and holder.

The Bank advanced the loan proceeds as set forth herein directly to Premiere and its members. Rodehorst was never advanced funds by the Bank in connection with any of the loans to Premiere, and he was not a direct beneficiary of the loans. Premiere, its members, and their wives, including Gartner, have refused to pay or to contribute to Rodehorst all or their proportionate share of promissory notes Nos. 24642 and 25822. Rodehorst is not related to any member of Premiere.

## ASSIGNMENTS OF ERROR

Rodehorst assigns, restated, that the trial court erred by dismissing these actions after sustaining Gartner's demurrers and denying Rodehorst leave to amend his petitions.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Stahlecker v. Ford Motor Co., ante* p. 601, 667 N.W.2d 244 (2003); *Regier v. Good Samaritan Hosp.*, 264 Neb. 660, 651 N.W.2d 210 (2002). In determining whether a cause of action has been stated, a petition is to be construed liberally; if, as so construed, the petition states a cause of action, the demurrer is to be overruled. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002); *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001). Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003); *Rodriguez v. Nielsen*, 264 Neb. 558, 650 N.W.2d 237 (2002).

## ANALYSIS

### EQUITABLE CONTRIBUTION

Rodehorst seeks to enforce the equitable right of contribution among joint obligors articulated in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 59, 22 N.W.2d 403, 410 (1946), as follows:

> "Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution . . . among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. . . ."

(Emphasis in original.) Quoting 2 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 411 (5th ed. 1941). Further quoting Pomeroy's treatise, we stated:

> "Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. . . . The right, however, may be controlled or modified by express agreement among the co-sureties or debtors. The doctrine of contribution rests upon the maxim, Equality is equity . . . ."

*Id.*, quoting 4 Pomeroy, *supra*, § 1418. More recently, in discussing the principles of contribution among joint tort-feasors, we stated that " ' "general principles of justice require that in the case of a common obligation, the discharge of it by one of the obligors without proportionate payment from the other, gives the latter an advantage to which he is not equitably entitled." ' "
*Northland Ins. Co. v. State*, 242 Neb. 10, 15, 492 N.W.2d 866,

870 (1992), quoting *Royal Ind. Co. v. Aetna Cas. & Sur. Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975).

In this case, both Rodehorst and Gartner guaranteed the promissory notes in question, but Rodehorst also cosigned the notes. The district court concluded that as a cosignor, Rodehorst's liability was primary, whereas Gartner's was secondary. Thus, the district court held that Rodehorst was not legally entitled to seek contribution from Gartner. On appeal, Rodehorst argues that because he cosigned the notes as an accommodation party, his obligation on the notes was the same as that of Gartner, and his payment therefore gave rise to an equitable right of contribution. Resolution of this issue requires an examination of the specific pecuniary obligations undertaken by each party. We look to the documents, which are incorporated by reference in Rodehorst's operative petitions, to determine whether Rodehorst's obligation as a cosigner is distinguishable from that which he and Gartner shared as coguarantors.

GUARANTIES

A guaranty is not an agreement to pay a fixed amount and is therefore not a negotiable instrument subject to article 3 of the Nebraska Uniform Commercial Code (U.C.C.), Neb. U.C.C. §§ 3-101 to 3-605 (Reissue 2001). See, §§ 3-102 and 3-104; *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998); *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984), *overruled on other grounds, First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985). A guaranty is basically a contract by which the guarantor promises to make payment if the principal debtor defaults. *Northern Bank v. Dowd*, 252 Neb. 352, 562 N.W.2d 378 (1997). We therefore rely on general principles of contract and guaranty law to determine Rodehorst's and Gartner's obligations as guarantors. See, *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992); *Nogg Bros. Paper Co. v. Bickels*, 233 Neb. 561, 446 N.W.2d 729 (1989).

A guaranty is a collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance.

*Northern Bank v. Dowd, supra*; *Chiles, Heider & Co. v. Pawnee Meadows*, 217 Neb. 315, 350 N.W.2d 1 (1984). However,

> [w]here [a] guaranty is absolute—that is, subject to no condition except the default of the principal debtor—or has become absolute by the occurrence of the named conditions, the guarantor is primarily liable for the debt. In that event, the creditor may maintain an action against the guarantor immediately upon default of the debtor, without demand upon the debtor for payment, and without first proceeding against the debtor.

38 Am. Jur. 2d *Guaranty* § 105 at 959-60 (1999). In *Transamerica Commercial Fin. Corp. v. Rochford*, 244 Neb. 802, 808, 509 N.W.2d 214, 219 (1993), this court recognized this general principle, stating that "[u]nder an absolute guaranty of payment . . . the guarantor undertakes that if the obligation is not paid when due, the guarantor will pay it according to its terms without regard to whether the guaranteed person has exhausted all remedies against the primary debtor." See, also, *Nogg Bros. Paper Co. v. Bickels, supra*; *First Nat. Bank v. Benedict Consol. Indus.*, 224 Neb. 860, 402 N.W.2d 259 (1987).

The guaranties which Rodehorst and Gartner signed on April 15, 1998, are separate documents having identical substantive provisions. Each document expresses the guarantor's intent to "guarantee at all times the performance and prompt payment" of the indebtedness of Premiere "when due, whether at maturity or earlier by reason of acceleration or otherwise." The guaranties expressly apply to the then-existing indebtedness of Premiere to the Bank, as well as indebtedness incurred or created subsequent to the execution of the guaranties. Both guaranties include an express waiver of any right to require the Bank to first proceed against Premiere before seeking payment from the guarantors. Thus, both documents were guaranties of payment, as distinguished from guaranties of collection. See *Nogg Bros. Paper Co. v. Bickels, supra*. As coguarantors of payment, Rodehorst and Gartner had identical pecuniary obligations. In *Mandolfo v. Chudy, supra*, we held that under *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946), a guarantor of a promissory note who had made payment could seek contribution

from a coguarantor for that party's proportionate share of the obligation.

### ACCOMMODATION MAKER

As we have noted, in addition to being a guarantor of payment, Rodehorst also cosigned the promissory notes dated August 16, 1999, and August 25, 2000. The notes are unconditional promises to pay a fixed amount of money with interest to the Bank at a definite time and are therefore negotiable instruments subject to the provisions of article 3 of the U.C.C. See § 3-104. In that he signed the notes and is identified therein as a person undertaking to pay, Rodehorst was a "maker" of the notes as defined by § 3-103(5). However, § 3-419(a) provides that

> [i]f an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation".

Moreover, "[a]n accommodation party may sign the instrument as maker, drawer, acceptor, or indorser and, subject to [§ 3-419](d), is obliged to pay the instrument in the capacity in which the accommodation party signs." § 3-419(b). The rights of an accommodation party as to an accommodated party are set forth in § 3-419(e) as follows:

> An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party. An accommodated party who pays the instrument has no right of recourse against, and is not entitled to contribution from, an accommodation party.

Rodehorst alleged that the proceeds of the loans represented by the two promissory notes were advanced to Premiere or its members, that he did not receive any of the proceeds, and that he was not a "direct beneficiary" of the loans. Rodehorst further alleged that he had no familial relationship with any member of Premiere. Assuming the truth of these factual allegations for purposes of reviewing an order sustaining a demurrer, we must

regard Rodehorst as an accommodation party on each of the two promissory notes at issue. We also note that the district court stated that the "parties agree that . . . Rodehorst's role in obtaining [the notes] was that of an accommodation maker" and that neither party has disputed this point on appeal.

An accommodation party is a surety. *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989). Suretyship is defined as

> "a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal. The surety's obligation is not an original and direct one for the performance of his own act, but is accessory or collateral to the obligation contracted by the principal. It is of the essence of the surety's contract that there be a valid obligation."

(Emphasis omitted.) *Sawyer v. State Surety Co.*, 251 Neb. 440, 444, 558 N.W.2d 43, 47 (1997), quoting *Niklaus v. Phoenix Indemnity Co.*, 166 Neb. 438, 89 N.W.2d 258 (1958). "In effect the surety undertakes to 'back up' the performance of the debtor and thereby gives the creditor the added assurance of having another party to the obligation." 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16-10 at 105 (4th ed. 1995).

CONTRIBUTION AMONG COSURETIES

While recognizing that some courts draw a distinction between the terms "surety" and "guarantor," this court uses the terms interchangeably. *Northern Bank v. Dowd*, 252 Neb. 352, 562 N.W.2d 378 (1997). For example, in characterizing an accommodation party as a "surety," we have observed that "by lending its name to the maker of the note, [the accommodation party] in a sense, *guarantees* that in the event of default by the principal obligor, the accommodation party will be liable." *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. at 5, 434 N.W.2d at 534. See, also, *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992) (applying surety rules in determining liability under guaranty agreement); Gaspar *v. Flott*, 209 Neb. 260, 261, 307 N.W.2d 500, 502 (1981) (describing party who signed guaranty as "guarantor or surety"); *Midstates Acceptance v. Voss*, 189

Neb. 411, 413, 202 N.W.2d 822, 824 (1972) (describing party guaranteeing payment as "surety or guarantor"). We further note that under the U.C.C., the word "surety" is defined to include a guarantor. Neb. U.C.C. § 1-201(40) (Reissue 2001).

Assuming the truth of the facts alleged by Rodehorst, we conclude that he and Gartner were both sureties and that Premiere was the primary obligor on the two promissory notes which Rodehorst paid. Thus, the dispositive issue in these cases is whether a surety who is both an accommodation maker and guarantor and who satisfies an indebtedness, has a right of contribution against a cosurety who is only a guarantor with respect to the same indebtedness.

One commentator states the general rule of contribution among cosureties as follows:

> On principle, it would seem clear that whenever two persons, or one person and the property of another, have come under an absolute liability without more, there should be contribution *regardless of the form of the undertaking*, unless some contract between them or some equitable consideration requires a different result. Thus, where one person unconditionally guarantees payment and another is a surety absolutely liable for the same debt, there should be contribution.

(Emphasis supplied.) 23 Samuel Williston, A Treatise on the Law of Contracts § 61:64 at 234 (Richard A. Lord ed., 4th ed. 2002). We agree and hold that a right of contribution exists between cosureties regardless of whether they are designated as guarantors, accommodation makers, or otherwise, provided that they share the same pecuniary obligation with respect to the same debt. See *Rogers v. National Surety Co.*, 116 Neb. 170, 216 N.W.2d 182 (1927) (holding that no right of contribution existed between surety on banker's bond and statutory depositor's guarantee fund because liability of each was dependent upon different factors).

In the instant case, Rodehorst and Gartner both became obligated as guarantors of payment when the indebtedness represented by the two promissory notes was not paid at maturity. The same event triggered Rodehorst's liability as an accommodation maker. At that point, the Bank could have proceeded directly

against any of the guarantors, or against Rodehorst as the accommodation maker, without first seeking collection or satisfaction from Premiere, the primary obligor. See *First Nat. Bank v. Benedict Consol. Indus.*, 224 Neb. 860, 402 N.W.2d 259 (1987). Thus, the fact that Rodehorst was both a guarantor of payment and an accommodation maker does not distinguish his pecuniary obligation with respect to the indebtedness from that of cosurety Gartner, who was only a guarantor of payment. Because both Rodehorst and Gartner became obligated to the Bank for all of Premiere's outstanding indebtedness on the notes which were unpaid at maturity, they are cosureties who share the same pecuniary obligation with respect to the same indebtedness. Rodehorst, having allegedly satisfied the entire indebtedness, is entitled to seek equitable contribution from Gartner for her proportionate share under the principle set forth in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946). The assignment of promissory note No. 25822 from the Bank to Rodehorst neither enhances nor diminishes this right. See *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998).

## CONCLUSION

Based upon our independent conclusion that the operative amended petitions in each of these cases include factual allegations which are sufficient to state a cause of action for equitable contribution, we reverse the judgments of the district court in each case and remand the causes for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.