Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2025 08:09 AM CDT

In re Estate of Sidney B. Harchelroad, deceased.
Michelle Harchelroad, individually and
as Personal Representative of the Estate of
Brian L. Harchelroad, deceased, appellee, v.
Carol Harchelroad, as Personal Representative
of the Estate of Sidney B. Harchelroad,
deceased, appellant.

___ N.W.3d ___

Filed March 14, 2025.    No. S-23-915.

1. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of
an equity question, an appellate court, reviewing probate matters, exam-
ines for error appearing on the record made in the county court. When
reviewing a judgment for errors appearing on the record, the inquiry is
whether the decision conforms to the law, is supported by competent
evidence, and is neither arbitrary, capricious, nor unreasonable.
2. **Decedents' Estates: Appeal and Error.** An appellate court, in review-
ing a probate court judgment for errors appearing on the record, will
not substitute its factual findings for those of the probate court where
competent evidence supports those findings.
3. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing
questions of law in a probate matter, an appellate court reaches a conclu-
sion independent of the determination reached by the court below.
4. **Contracts: Intent.** The question of whether a party is an accommoda-
tion maker or a principal obligor on an instrument is a question of intent.
5. **Principal and Surety: Words and Phrases.** An accommodation party
is a surety.
6. ____: ____. A surety engages to be answerable for the debt, default, or
miscarriage of another, the principal.
7. **Assignments: Words and Phrases.** An assignment is the transfer of
some identifiable property, claim, or right from the assignor to the
assignee.

8. **Contribution: Equity.** The doctrine of contribution is an equitable doctrine which requires that persons under a common burden share that burden equitably.

9. **Contribution: Parties: Liability.** The prerequisites to a claim for contribution are that the party seeking contribution and the party from whom it is sought share a common liability and that the party seeking contribution has discharged more than his or her fair share of the common liability.

10. **Guaranty: Principal and Surety.** A right of contribution exists between cosureties regardless of whether they are designated as guarantors, accommodation makers, or otherwise, provided that they share the same pecuniary obligation with respect to the same debt.

11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

Appeal from the County Court for Chase County, Edward D. Steenburg, Judge. Affirmed.

Robert B. Reynolds and Michael D. Samuelson, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellant.

Erin R. Robak, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellee.

Funke, C.J., Cassel, Stacy, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

This appeal concerns three claims filed in the estate of Sidney B. Harchelroad. Two claims were filed by banks relating to unpaid promissory notes upon which Sidney and Brian L. Harchelroad were cosureties. The third was filed by Brian, contingent on his paying to the banks more than his share. He did so. After Brian's death, his wife, Michelle Harchelroad, paid the banks the amounts due in exchange for an assignment of their claims. Brian's estate and Michelle then sought from Sidney's estate one-half of the amounts paid. The county court largely granted the request, and this appeal followed. Because the notes were not extinguished by Michelle's payments in her individual capacity or the assignments to Michelle, we affirm the county court's decision.

## II. BACKGROUND

### 1. Business Loans and Promissory Notes

Brothers Sidney and Brian, officers of Harchelroad Motors, Inc. (HMI), obtained loans on HMI's behalf. This case involves promissory notes given in exchange for loans from Western States Bank, formerly known as Valley Bank and Trust Co. (Western), and Waypoint Bank, formerly known as First Bank & Trust Company (Waypoint):

| Bank | Amount | Signed by |
|------|--------|-----------|
| Waypoint Note #16575 | $1,805,000 | Sidney: individually and as officer<br>Brian: individually and as officer |
| Western Note | $1,500,100 | Sidney: individually and as officer<br>Brian: individually and as officer |
| Waypoint Note #20823 | $2,000,000 | Sidney: as officer<br>Brian: as officer |

The proceeds of the loans were advanced to HMI; Sidney and Brian did not personally receive any of the proceeds. For "Waypoint Note #20823," Sidney and Brian each executed a guaranty for the loan. This loan and guaranty are not the subject of a claim for contribution on appeal.

### 2. Sidney's Estate

Sidney died in 2018, and his wife, Carol Harchelroad, was appointed as personal representative of his estate. Three claims filed against his estate are pertinent in this appeal.

Waypoint and Western each filed a claim related to one or more of the promissory notes identified above. These claims were allowed.[1]

---

[1] See Neb. Rev. Stat. § 30-2488(a) (Cum. Supp. 2024).

Brian also filed a claim. It stated that if Brian had to pay either or both of the banks in an amount greater than any payment made by Sidney's estate, then Brian would have a claim against Sidney's estate for any payment made in excess of the payments made by Sidney's estate. The claim acknowledged that it was currently "contingent, uncertain and unliquidated."

Carol disallowed Brian's claim. Brian thereafter filed a petition for allowance of his claim.

### 3. District Court Lawsuits

After Waypoint and Western filed claims in Sidney's estate and before Brian filed his claim, Waypoint and Western brought lawsuits in district court.

#### (a) Waypoint

Waypoint sued Brian after it demanded HMI and Brian pay the entire balances due on the notes but no payments were made. In November 2018, the court entered judgment of over $3.3 million in favor of Waypoint and against Brian. In March 2019, Waypoint entered into a forbearance agreement with HMI and Brian.

#### (b) Western

Western filed two separate lawsuits. One, an action for breach of contract, will be discussed later in the background section. In the other, a replevin action against HMI, Western alleged that HMI owed over $1.4 million pursuant to the note and sought immediate possession of certain collateral.

Shortly after filing suit, Western entered into a forbearance agreement with HMI, Brian, and Carol, in her capacity as personal representative. Under the agreement, Western agreed to not take further action in exchange for payments of $200,000 and certain promises. Brian made payments totaling $600,000.

### 4. Brian's Death and Claims

In August 2019, Brian died. His wife, Michelle, was appointed as personal representative of his estate. Waypoint and Western filed claims in Brian's estate. Waypoint identified

its claim as the March 2019 forbearance agreement for over $2.5 million. Western based its claim for $998,839.87 upon the promissory note.

### 5. Western's Other Lawsuit and Judgment

As mentioned, Western also sued for breach of contract on the promissory note. In April 2020, it filed an amended complaint naming as defendants Michelle and Carol, in their personal representative capacities. In November, the court entered a stipulated judgment against HMI and Brian's estate for $666,498.58 plus interest.

### 6. Payments and Substitutions of Claimant

#### (a) Waypoint

With regard to Waypoint Note #20823, HMI sold its car dealership and used proceeds from the sale to "pa[y] off" the note.

Turning to "Waypoint Note #16575," Michelle obtained a loan for $965,000 and disbursed $946,487.29 to Waypoint to "pa[y] off" the note. In exchange for the payment, Michelle, individually, and Waypoint entered into a note purchase agreement in October 2021 "with regard to the sale of the Note, the Security Documents and assignment of rights under Statements of Claim and a Judgment owned by [Waypoint]." The agreement stated, "The transaction contemplated herein is a sale and assignment of the Loan Documents to [Michelle] and not a payment of the Note."

Michelle subsequently filed in Sidney's estate a notice of substitution of claimant. It stated that Michelle, individually, purchased and was the rightful owner and successor in interest to the claim of Waypoint and that she substituted herself as the rightful claimant.

#### (b) Western

In December 2020, Michelle, individually and as personal representative of Brian's estate, entered into an agreement with

Western regarding the sale and purchase of the promissory note. She made a payment of $671,481.40 to Western to "pay off" the loan. In return, Western agreed to "transfer[] and convey[] all of its rights, legal, contractual, equitable or otherwise in to and under the Note and HMI Loan Documents and . . . claims and judgments."

Subsequently, Michelle sought to substitute herself as a claimant in Sidney's estate and as a plaintiff in Western's breach of contract lawsuit. In Sidney's estate, Michelle's notice of substitution of claimant stated that she, individually, purchased and was the rightful owner and successor in interest to the claim of Western. In Western's lawsuit, Michelle, individually and as personal representative of Brian's estate, filed a substitution of party stating that Michelle, as assignee and successor in interest to Western, had succeeded Western as the plaintiff in the lawsuit.

### 7. Petition for Order to Pay Claims

Michelle, individually and as personal representative of Brian's estate, filed in Sidney's estate a petition for order to pay claims. She sought an order requiring Sidney's estate to pay her $939,322.89 to satisfy the statements of claim initially filed by Waypoint and Western.

With regard to the Waypoint indebtedness, Michelle alleged that Brian paid $600,000 and that she paid $946,487.29. Michelle alleged that in exchange for her payment, Waypoint transferred to her all of its interest in note #16575. According to Michelle, the contributory share of Sidney's estate was no less than $515,495.76.

With respect to the Western indebtedness, Michelle alleged that Brian paid $600,000 and that she, individually and as personal representative of Brian's estate, paid $671,481.40. Michelle asserted that in exchange for the latter payment, Western transferred to her all of Western's rights under the note. Michelle alleged that the contributory share of Sidney's estate was no less than $423,827.13.

## 8. Hearing

The county court conducted a hearing. Evidence established that HMI continues to operate at a profit.

Michelle testified that she "run[s] the company." At the time of the September 2023 hearing, she had been president of HMI for approximately 2 years. Michelle was also HMI's majority shareholder and the president of HMI's board of directors. HMI pays Michelle a yearly salary of $50,000 and $1,500 per month to rent space.

Michelle testified about Brian's payments to Waypoint and Western. He made the payments because HMI "was not in a financial position to make any payments, and the banks were demanding the money, and the loans were in default." According to Michelle, Brian used funds from life insurance, investments he had with Michelle, and "inheritance from [his] parents' estate." Michelle denied that any money from HMI was used to make payments on the notes. HMI entered into promissory notes with Brian in November 2018 and February 2019, agreeing to repay him. But Michelle testified that HMI had not made any payments under those notes because it was not in a financial position to do so.

Michelle also testified concerning her payment in connection with the debt owed on Waypoint Note #16575. She "took out a personal loan" of $965,000 on HMI's behalf "[b]ecause [HMI] couldn't get a loan to pay that off." HMI was not a borrower on that personal loan. HMI's board of directors adopted a resolution authorizing Michelle, as president of HMI, to enter into a promissory note with Michelle, individually, in the principal amount of $965,000. HMI makes monthly payments to Michelle of $4,556.38 for the $946,487.29 that she paid. HMI still owes $919,119.02.

Finally, Michelle testified about the Western indebtedness. She paid Western $671,481.40 because the loan was in default and Western wanted to be paid. Michelle testified that "[she] was able to pay it off" but that HMI "was not in a financial position to get a loan." To make the payment, Michelle used

funds deposited into her bank account from a "New York Life [insurance] payment" and "an investment that [she] took money out of." HMI and Michelle entered into a promissory note with respect to Michelle's payment to Western. HMI is obligated to make monthly payments to Michelle of $4,966.87 for 15 years to repay the principal amount of $671,481.40. An exhibit showed the remaining debt to be $582,526.

There is no dispute that Sidney's estate had made no payments toward the indebtedness owed to Waypoint and Western.

## 9. Order

The county court entered an order granting in part Brian's petition for allowance of claim and granting Michelle's petition for order to pay claims.

### (a) Brian's Petition for Allowance of Claim

The court granted the petition for allowance of claim regarding the $600,000 in payments Brian made on the Western note. Because Sidney's estate had made no payments, the court found that Brian's estate was entitled to contribution from Sidney's estate of $300,000. The court denied the petition for allowance of claim as to the $600,000 in payments Brian made to Waypoint on note #20823, and that finding is not challenged in this appeal.

### (b) Michelle's Petition for Order to Pay Claims

The court found that Michelle, individually, made all of the payments to Waypoint on note #16575 and to Western. Citing Michelle's testimony and her written agreements with Waypoint and Western, the court found that the notes were not extinguished by Michelle's payments. Rather, Waypoint and Western transferred to Michelle all of their rights to the notes.

The court also rejected Carol's argument that the notes were extinguished by the assignments to Michelle, a comaker. The court determined that Michelle did not make payments on the notes as the personal representative of Brian's estate, did not use estate funds, and did not make the payment on

behalf of anyone other than herself. Further, the court stated that there was no evidence of any intent to discharge the obligation of Sidney's estate. The court found that the claims belonged to Michelle, individually.

The court also concluded that the notes did not merge into the judgment as it pertained to Sidney's estate. The court reasoned that the argument for merger might be true as to Brian, but that no judgment had been entered against Sidney's estate. Thus, the court stated that the promissory notes are enforceable against Sidney's estate.

Accordingly, the court granted Michelle's petition for order to pay claims. The court ordered Sidney's estate to pay Michelle, individually, $291,263.20 for the Western note and $459,559.51 for Waypoint Note #16575.

Carol filed a timely appeal, which we moved to our docket.[2]

## III. ASSIGNMENTS OF ERROR

Carol assigns that the county court erred in (1) failing to find that the claims originally filed by Waypoint and Western were extinguished when the claims were based upon promissory notes that (a) had merged into judgments and (b) had been paid in full, (2) granting in part Brian's petition for allowance of claim, and (3) granting the petition for order to pay claims filed by Michelle, individually and as personal representative of Brian's estate.

## IV. STANDARD OF REVIEW

[1-3] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] An appellate court, in reviewing a probate court judgment for

---

[2]  See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[3]  *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020).

errors appearing on the record, will not substitute its factual findings for those of the probate court where competent evidence supports those findings.[4] When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[5]

## V. ANALYSIS

We begin by discussing Waypoint Note #16575 and the Western note, as well as the statuses of Sidney, Brian, and Michelle with respect to the notes. Next, we set forth a general discussion of the doctrine of contribution. Lastly, we address Carol's assignments of error alleging that the notes were extinguished and that the county court erred in ordering contribution against Sidney's estate.

### 1. Promissory Notes

In general, a negotiable instrument is an unconditional promise to pay a fixed amount of money with interest at a definite time.[6] Waypoint Note #16575 and the Western note fit this definition. The provisions of article 3 of Nebraska's Uniform Commercial Code apply to negotiable instruments.[7]

Sidney and Brian signed the notes individually and as officers of HMI. Thus, Sidney and Brian were each a maker of the notes. "'Maker' means a person who signs or is identified in a note as a person undertaking to pay."[8]

Except as otherwise provided in the instrument, two or more persons who have the same liability on an instrument—such as liability as makers—are jointly and severally liable in the capacity in which they sign.[9] The notes here expressly contemplated joint and several liability.

---

[4] *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023).

[5] *In re Estate of Lorenz*, 292 Neb. 543, 873 N.W.2d 396 (2016).

[6] See Neb. U.C.C. § 3-104(a) (Reissue 2020).

[7] See Neb. U.C.C. § 3-102(a) (Reissue 2020).

[8] Neb. U.C.C. § 3-103(a)(5) (Reissue 2020).

[9] See Neb. U.C.C. § 3-116(a) (Reissue 2020).

[4] A party who signs an instrument as a maker may be an accommodation party.[10] An accommodation party is a party to an instrument who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument."[11] An accommodation party "is obliged to pay the instrument in the capacity in which the accommodation party signs."[12] The question of whether a party is an accommodation maker or a principal obligor on an instrument is a question of intent.[13] Here, Sidney and Brian did not receive any of the proceeds of the notes, and the parties agree that Sidney and Brian were accommodation parties.

[5,6] An accommodation party is a surety.[14] "'Surety' includes a guarantor or other secondary obligor."[15] A surety engages to be answerable for the debt, default, or miscarriage of another, the principal.[16] Sidney and Brian were cosureties with respect to the notes.

Waypoint and Western filed claims in the respective estates of Sidney and Brian related to the outstanding obligations flowing from the notes. Sidney's estate did not disallow the claims. A claimant whose claim has been allowed but not paid may secure an order directing the personal representative to pay the claim to the extent that funds of the estate are available for the payment.[17] Here, Michelle sought such an order.

[7] In addition to being the personal representative of Brian's estate, Michelle acquired a different status. In her individual

---

[10] See Neb. U.C.C. § 3-419(b) (Reissue 2020).

[11] § 3-419(a).

[12] § 3-419(b).

[13] *Borley Storage & Transfer Co. v. Whitted*, 271 Neb. 84, 710 N.W.2d 71 (2006).

[14] *Rodehorst v. Gartner*, 266 Neb. 842, 669 N.W.2d 679 (2003).

[15] Neb. U.C.C. § 1-201(39) (Cum. Supp. 2024).

[16] See *Rodehorst v. Gartner, supra* note 14.

[17] See Neb. Rev. Stat. § 30-2489(a) (Reissue 2016).

capacity, Michelle paid the amounts due to Waypoint and Western and took an assignment of their rights. An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee.[18] An assignee stands in the shoes of the assignor and accepts it subject to all available defenses.[19] The assignment transfers to an assignee only the rights of the assignor.[20] We will discuss the effect of Michelle's status as an assignee in more detail in the context of resolving Carol's assignments of error.

## 2. Contribution

[8] The doctrine of contribution is an equitable doctrine which requires that persons under a common burden share that burden equitably.[21] We have explained the doctrine as follows:

> "'Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. . . . The right, however, may be controlled or modified by express agreement among the co-sureties or debtors. The doctrine of contribution rests upon the maxim, Equality is equity . . . .'"[22]

[9,10] The prerequisites to a claim for contribution are that the party seeking contribution and the party from whom it is

---

[18] *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 312 Neb. 606, 980 N.W.2d 420 (2022).

[19] *Zapata v. McHugh*, 296 Neb. 216, 893 N.W.2d 720 (2017).

[20] *Id.*

[21] *Estate of Powell v. Montange*, 277 Neb. 846, 765 N.W.2d 496 (2009).

[22] *Rodehorst v. Gartner, supra* note 14, 266 Neb. at 847, 669 N.W.2d at 684, quoting *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946).

sought share a common liability and that the party seeking contribution has discharged more than his or her fair share of the common liability.[23] The Uniform Commercial Code states, "Except as provided in section 3-419(e) or by agreement of the affected parties, a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law."[24] A right of contribution exists between cosureties regardless of whether they are designated as guarantors, accommodation makers, or otherwise, provided that they share the same pecuniary obligation with respect to the same debt.[25] The record contains no agreement between Sidney and Brian providing for other than equal liability as cosureties.

With this understanding of the parties' statuses and the doctrine of contribution, we turn to Carol's assignments of error.

### 3. Extinguishment of Claims

Carol advances two reasons why she believes the claims were extinguished. We address the reasons separately and find no merit to either.

### (a) Merged Into Judgments

First, Carol contends that obligations on the promissory notes merged into the judgments and that the notes ceased to exist. As set forth in the background, judgments against Brian or his estate were entered in favor of Waypoint in 2018 and in favor of Western in 2020. No judgment was entered against Sidney or his estate.

Carol's argument relies on two propositions contained in *American Nat. Bank v. Medved*.[26] One stated that as a general

---

[23] See *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

[24] § 3-116(b).

[25] *Rodehorst v. Gartner, supra* note 14.

[26] *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011).

rule, when a claim on a contract is reduced to judgment, the contract between the parties is voluntarily surrendered and canceled by merger in the judgment and ceases to exist.[27] The other provided that when a cause of action for the recovery of money damages is merged in a valid and final judgment in favor of the plaintiff, the cause of action is extinguished and a new cause of action on the judgment is created.[28]

Carol's reliance on the propositions from *American Nat. Bank* concerning merger is misplaced with regard to Sidney's estate. Neither judgment was entered against Sidney's estate. Because Sidney had joint and several liability, a creditor could still pursue a claim against Sidney's estate based on the notes.

### (b) Payment in Full

Second, Carol argues that the claims of Waypoint and Western were extinguished because the notes and guaranty had been paid in full. The county court determined that the notes were not extinguished; rather, the banks transferred to Michelle their rights in and to the notes. We agree.

We turn to Michelle's agreements with each bank. The agreement with Waypoint explicitly stated, "The transaction contemplated herein is a sale and assignment of the Loan Documents to [Michelle] and not a payment of the Note." The agreement with Western stated that Michelle wished to purchase Western's "rights, claims, and benefits" pertaining to the notes and judgment. In exchange for Michelle's payment, Western "transfers and conveys all of its rights, legal, contractual, equitable or otherwise in to and under the Note and HMI Loan Documents and the above referenced claims and judgments." The agreement contemplated a "transfer of ownership."

---

[27] *Id.*

[28] *Id.*

The documentary evidence supports Michelle's testimony that she obtained an assignment of the notes of Waypoint and Western. In *Rodehorst v. Gartner*,[29] we determined that the assignment of a promissory note from the bank to a surety who was both an accommodation maker and guarantor neither enhanced nor diminished that surety's right to seek equitable contribution from a cosurety. Here, the assignments from the banks to Michelle did not change Brian's status as a cosurety. Nor did the assignments diminish Michelle's right to seek contribution from Sidney's estate of a proportionate share.

Carol makes a different challenge based on language in Michelle's agreement with Western. The agreement identified the purchaser as Michelle, individually *and as personal representative of Brian's estate*. Similarly, Michelle's petition for order to pay claims asserted that Michelle, individually and *as personal representative of Brian's estate*, paid Western. Thus, Carol contends that Michelle's involvement in making the payment in her capacity as personal representative of Brian's estate resulted in extinguishment rather than assignment.

The county court rejected this contention and found that Michelle, individually, made the payment. Michelle testified that she paid Western by using funds deposited into her bank account from an insurance payment and an investment. The court credited this testimony, which a bank statement corroborated. Because competent evidence supports the court's finding, we will not substitute a different one.

[11] And because we accept the county court's finding that Michelle, individually, made the payment, we need not address Carol's arguments premised on Michelle's making the payment in her capacity as personal representative of Brian's estate. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[30]

---

[29] *Rodehorst v. Gartner, supra* note 14.

[30] *In re Estate of Walker, supra* note 4.

4. Granting Contribution Against
Sidney's Estate

(a) Payments by Brian

Carol challenges the court's granting of the petition for allowance of claim with respect to Brian's payment of $600,000 to Western. Carol's argument that Brian's petition should have been denied is based on a narrow reading of the claim he filed in Sidney's estate. She contends that Brian's claim was limited to the guaranty he executed for Waypoint Note #20823. We disagree.

Because Carol's argument is based on the language of Brian's statement of claim, we set it out in full. It stated:

This Claim of the undersigned is hereby made against this estate as follows:

The decedent, Sidney B. Harchelroad and the Claimant, Brian L. Harchelroad, each executed Guarantees of Promissory Notes which became the subject matter of Claims filed in this Estate by Waypoint Bank and Western States Bank. The Guarantees are equal and identical in their terms and as a result the decedent and the Claimant have equal liability for the bank loans as a result of the Guarantees. In the event that at some point in the future, the Claimant is required to make payment to one or both of the bank creditors as a result of his Guarantee, which is in an amount greater than any payment made by the Estate of Sidney B. Harchelroad, the undersigned will then have a claim against this Estate for any payment made in excess of the payments made by the Decedent's Estate. At this time any such Claim has not yet arisen and is contingent, uncertain and unliquidated.

At the time that Brian filed his claim in Sidney's estate, Waypoint and Western had already filed claims based on promissory notes and on a guaranty. Brian's claim specifically referred to "Guarantees of Promissory Notes which became the subject matter of Claims filed in this Estate by Waypoint Bank and Western States Bank." This language put Sidney's estate

on notice that Brian may seek contribution from the estate if Brian had to pay Waypoint or Western an amount greater than the amounts contributed by Sidney's estate. Carol's argument that Brian's claim was limited to the guaranty with Waypoint lacks merit.

Carol further argues that Brian was not entitled to contribution because HMI provided Brian with promissory notes to reimburse him for his payments to Waypoint and Western. However, there is no evidence that HMI has made any payments on those notes.

To the extent Carol uses the existence of the promissory notes between HMI and Brian to argue that the parties do not share the same pecuniary obligations with respect to the debt, the argument lacks merit. Sidney and Brian started out as accommodation makers—i.e., cosureties—who shared the same pecuniary obligation with respect to the promissory notes that they signed with Waypoint and Western. When the promissory notes were not paid at maturity, Sidney and Brian both became obligated for payment of the notes.[31] Because Brian paid more than a proportionate share, his estate is entitled to contribution from Sidney's estate.

Carol's arguments related to HMI's ability to pay do not assist her. She argues that HMI has the capacity to repay the indebtedness and that Brian's estate should have to seek reimbursement from HMI before compelling contribution. But HMI's solvency has no impact on a cosurety's right to contribution from another cosurety. Thus, Brian's estate could seek contribution from Sidney's estate.

Carol further contends that the court erroneously determined the amount of the proportionate share. The court's determination required Sidney's estate to pay a contributory one-half of the payments made by Brian. Carol highlights that there were three makers on the relevant notes—HMI, Sidney, and Brian. She cites case law providing that the proportionate

---

[31] See *Rodehorst v. Gartner, supra* note 14.

share should be determined by dividing the total sum among the number of solvent parties.[32] The case Carol cites predated adoption of the Uniform Commercial Code. The Uniform Commercial Code specifies that contribution is among parties having the same joint and several liability.[33] HMI—as the accommodated party—did not have the same liability as the cosureties. Thus, the court properly determined that the proportionate share was one-half.

We see no error on the record concerning the county court's decision that Sidney's estate should pay Michelle, as personal representative of Brian's estate, $300,000 plus interest on Brian's petition for allowance of claim.

### (b) Payments by Michelle

Carol also sets forth several reasons why she believes the trial court erred in granting Michelle's petition for order to pay claims. None are persuasive.

Carol argues that Michelle is not deserving of the court's equity because HMI is making monthly payments to reimburse her and that Michelle should have to seek reimbursement from HMI before compelling contribution. Michelle brought her petition for order to pay claims individually and as personal representative of Brian's estate. And as assignee, Michelle had the right to seek contribution from a cosurety who was jointly and severally liable. Thus, Michelle was entitled to seek contribution from Sidney's estate equal to one-half of the amounts she paid.

Nothing in this opinion should be read to foreclose Sidney's estate from seeking reimbursement if, due to payments by HMI to Michelle or Brian's estate, Sidney's estate paid contribution greater than its proportionate share.

The county court's decision that Sidney's estate should pay Michelle, individually, $459,559.51 plus interest relating

---

[32] See *Exchange Elevator Company v. Marshall, supra* note 22.

[33] See § 3-116(b).

to the claim initially filed by Waypoint on note #16575 and $291,263.20 plus interest relating to the claim initially filed by Western conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

## VI. CONCLUSION

We conclude the following:

• Sidney and Brian, as accommodation makers and cosureties, had the same pecuniary obligation with respect to the notes such that one could seek contribution from the other if he discharged more than his fair share of the common liability.

• Because neither judgment concerning the notes was entered against Sidney's estate and he had joint and several liability, the judgments did not extinguish Sidney's liability.

• Michelle, in her individual capacity, used her own funds to pay the banks the amounts they were owed in exchange for an assignment of Waypoint's and Western's rights under their respective notes. Because the agreements contemplated an assignment or transfer of rights, Michelle's payments to the banks did not extinguish the notes.

• Because Brian and Michelle paid more than one-half of a liability for which Sidney's estate shared equal liability, the county court properly granted the requests of Brian's estate and Michelle for contribution of one-half from Sidney's estate.

Finding no error on the record, we affirm the county court's order.

Affirmed.

Miller-Lerman, J., not participating.