EXCHANGE ELEVATOR COMPANY, A CORPORATION, ET AL., APPELLEES, V. EDWIN A. MARSHALL, APPELLANT.

22 N. W. 2d 403

FILED MARCH 29, 1946. No. 32033.

*E. L. Mahlin,* for appellant.

*Sidner, Lee & Gunderson, Ted C. Tow,* and *N. H. Mapes,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

SIMMONS, C. J.

In this action, as originally brought, four plaintiffs sought in equity to reach the interest of Edwin A. Marshall in the estates of his deceased father and brother, and to have that interest applied to the satisfaction of judgments. During the progress of the case the claims of two of the plaintiffs were settled. The appeal comes here on the claims of the Exchange Elevator Company and Donald Rottler. The defendants were Edwin A. Marshall and the administra-

tors of the estates as such and as individuals. No questions are presented here by the defendants other than the debtor. He will be referred to as Marshall. The trial court granted plaintiffs the relief prayed. We affirm in part and reverse and remand in part the judgment of the trial court.

The parties have argued the issues as to each judgment separately. We follow that procedure.

The action entitled "Exchange Elevator Company, a Corporation, Plaintiff, vs. Edwin A. Marshall, Defendant," was filed in the district court for Stanton County on October 14, 1930. An amended petition was filed on December 22, 1930. Marshall answered on December 18, 1931. On December 21, 1931, plaintiff filed a motion reciting that plaintiff had become insolvent and Wilder Lucas had been appointed and was trustee, moved that the action be revived in the name of Lucas and that he be substituted as plaintiff in said cause. On the same day the court entered an order reciting that Marshall was present in court by his attorneys, and agreeing to the revivor of said cause in the name of the trustee. The court decreed that said cause be revived in the name of Wilder Lucas, trustee of the Exchange Elevator Company, bankrupt, and "* * * that the same stand of record as to the pleadings the same as hereinbefore made." On March 19, 1932, plaintiff filed a motion reciting that the Exchange Elevator Company had become insolvent and that one Klosterman was trustee thereof, and that whereas the petition had recited that the Exchange Elevator Company was a corporation, it was in fact the same as Luehrmann Milling and Grain Company. Plaintiff moved that Klosterman be substituted as plaintiff, and that it be permitted to amend its petition by inserting therein that the Exchange Elevator Company was the same as Luehrmann Milling and Grain Company. On March 19, 1932, the court entered an order reciting that the motion had come on for hearing; that Marshall had appeared by his attorneys; and finding that the Exchange Elevator Company was the same as the Leuhrmann Milling and Grain Company, ordered the substitution of Klosterman as trus-

tee as plaintiff, and permitted the amendment of the petition.

On February 18, 1939, a judgment was entered in the action entitled "Exchange Elevator Company, a Corporation, Plaintiff, vs. Edwin A. Marshall, Defendant." It was recited therein that the matter came on for hearing upon the amended petition, the answer and the reply, and, a jury being waived, the cause was submitted to the court upon the pleadings and the evidence. The court found that there was due plaintiff on the causes of action set forth in the petition the sum of $968.88; that Marshall was entitled to a credit of $205.94, and judgment was entered for $762.94, interest and costs.

On January 17, 1944, execution was issued in Stanton County and returned unsatisfied. On March 20, 1944, a transcript of this judgment was filed in the diistrict court for Dodge County and execution issued thereon on August 12, 1944, and returned unsatisfied.

Thus the record stood when this action was brought to trial in the Dodge County District Court. Marshall offered evidence showing that on October 19, 1933, Klosterman, as trustee, had sold this chose in action to one Morris A. Eisenstein. Eisenstein then made application to be substituted as a party plaintiff in lieu of the Exchange Elevator Company. Marshall moved to strike. The trial court substituted Eisenstein as party plaintiff and directed that the action proceed in his name and gave Marshall further time in which to plead.

In his original answer, Marshall set out the record and claimed that at the time of the entry of the judgment in favor of the Exchange Elevator Company, that company was no longer in existence and was not the real party in interest, and that the judgment was null, void, and of no force and effect. Answering the application of Eisenstein he again set up these contentions and further contended that the district court for Dodge County was without jurisdiction to make the substitution; that Eisenstein was estopped to claim ownership and was guilty of laches; that the stat-

ute of limitations had run against the claim of Eisenstein; that he had no notice of the trial and did not have his day in court; and that the taking of the judgment was a fraud against him. He pleaded payment by assignment of certain claims against a railroad company to the plaintiff. In reply Eisenstein set up that all matters with reference to the judgment had been litigated, and that the court was without jurisdiction to consider a collateral attack on the judgment.

Further evidence then was received. Marshall testified that his answer as filed in the original action in Stanton County set forth payment and the rendition of services to plaintiff and the assignment of certain claims against the railroad company. He then was asked if he had any knowledge of the case being set for trial or of the trial. Upon objection being sustained, Marshall made an offer of proof, to which we shall refer presently. He then testified that some time after the judgment was entered, plaintiff's original attorney told him of the judgment and offered to take certain claims against the railroad company and if they were turned to him he would "figure the judgment paid." He further testified: "I think I took him up the bill of ladings and I think he collected them, I don't know." The next he knew another attorney for plaintiff asked him to make payment. "That is the last I heard of it then until it come up here." He did not think he told the second attorney of the "deal" with the first attorney. The second attorney testified that he had the exclusive handling of the claim for a year prior to the judgment; that he placed the claim in judgment; that some time thereafter he asked Marshall to settle the judgment for a small amount, and Marshall gave him a postdated check which the bank, on which it was drawn, refused payment for the reason, "no account." In his motion for a new trial Marshall set out that the check was drawn by mistake of the attorney on the wrong bank, and that he had money in another bank to pay the check and offered to tender into court the amount of the check.

The trial court decreed that there was due Eisenstein

$1,067.78 from Marshall, made a finding for the other plaintiff (to be referred to later herein), and decreed the judgment to be a lien upon the interest of Marshall in the estates, ordered the administrators to pay any amounts due Marshall into court and ordered certain property sold to be applied on the judgments.

Marshall assigns a great number of errors in general terms. Under our rules consideration of the cause is limited to errors assigned and discussed, save where we, at our option, note a plain error not assigned. Revised Rules of the Supreme Court, 8 a 2 (4).

Marshall argues first that the judgment or the district court for Stanton County was null and void because not entered in the name of the real party in interest. Section 25-301 R. S. 1943, provides that "Every action must be prosecuted in the name of the real party in interest * * *," except as provided in section 25-304, R. S. 1943. However, section 25-322, R. S. 1943, provides: "An action does not abate by the death or other disability of a party, or by the transfer of any interest therein during its pendency, if the cause of action survive or continue. In the case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest. In case of any other transfer of interest, the action may be continued in the name of the original party; or the court may allow the person to whom the transfer is made to be substituted in the action."

This record shows that the named plaintiff, Exchange Elevator Company, a corporation, was not a corporation. However, after the action was brought, Marshall by his attorneys agreeing thereto, a named person as trustee was substituted as party plaintiff, and, fairly construing it, the order of the court was that the action proceed in the name of the original party. Thereafter, it was shown to the court that the original plaintiff was not a corporation, and was the same as Luehrmann Milling and Grain Company. The trial court ordered that Klosterman, as trustee, be substituted as party plaintiff. Marshall, by his attorneys, par-

ticipated in the proceedings resulting in this order. The trial court did not change its original order that the action proceed in the name of the original party, although the trustee was the actual plaintiff. Section 25-304, R. S. 1943, authorizes the trustee of an express trust to bring an action without joining with him the person for whose benefit it is prosecuted. Hence, we have an action prosecuted in the name of an original plaintiff wherein a trustee is the actual plaintiff. It appears that subsequent thereto the interest of the trustee was transferred, but the action was continued in the name of the original party, as was permitted by statute. We have repeatedly held that the transfer of interest after the action is commenced does not prevent the action from being continued to final termination in the name of the original plaintiff. Vogt v. Binder, 76 Neb. 361, 107 N. W. 383.

Marshall agreed to the action proceeding in the name of the first trustee. He participated in the order substituting the second trustee. There is nothing in the record to indicate that objection was made by Marshall, either to the lack of capacity to sue of the original plaintiff or of the substituted plaintiffs. He must, therefore, be deemed to have waived any such objections. Champlin Bros. v. Sperling, 84 Neb. 633, 121 N. W. 976.

Marshall further contends that the district court for Dodge County was without jurisdiction to make a substitution of plaintiffs in an action based on a judgment rendered in Stanton County. We do not determine the jurisdictional question. The substitution was not necessary. If error, it was error without prejudice. There remain but one judgment in Stanton County and a proceeding to enforce it in Dodge County. Both actions continue in the name of the original party. Marshall himself so treats the action on this appeal.

Marshall next contends that the trial court erred in not permitting him to show fraud in that the judgment was entered without his knowledge or consent, without notice when the case was at issue on the pleadings, he not being

in default. At the trial Marshall was asked: "Did you have any knowledge of the case being set for trial or the trial thereof?" Plaintiff made this objection: "Objected to as incompetent, irrelevant and immaterial and an attempt to make a collateral attack on the judgment entered by a court of record after being entered. Any attack on a judgment of that type must be in Stanton, Nebraska." The objection was sustained. Marshall then offered " * * * to show by this witness that he had no knowledge of the case of Exchange Elevator Company v. Edwin A. Marshall pending in the District Court of Stanton County being set for trial; that he was not present at the time of trial; that he had no knowledge of any judgment being entered until considerable time thereafter and considerable time after the term in which said judgment was taken; that the judgment as entered was not approved either by himself or by his attorney and that same was taken without proof being offered and that he failed to have his day in court." Thereafter Marshall was permitted to testify as to when he first learned of the judgment.

The trial court did not err in rejecting the offer of proof, and that for a number of reasons. The question asked went to Marshall's knowledge of the "case being set for trial or the trial thereof." The offer to prove went to that matter and to several other matters as well. The rule is: "It is not error to reject an offer of proof not within the limits of the question on which the offer is based." Barr v. Post, 56 Neb. 698, 77 N. W. 123. See Keens v. Robertson, 46 Neb. 837, 65 N. W. 897; Erickson v. Schmill, 62 Neb. 368, 87 N. W. 166; Pike v. Hauptman, 83 Neb. 172, 119 N. W. 231; Thomas v. Shea, 90 Neb. 823, 134 N. W. 933. Likewise, the trial court had before it the judgment of the Stanton County District Court. That judgment imports verity. It recites that a jury was waived and evidence taken. The offer of proof was to show in part that the judgment was taken "without proof being offered." Marshall thus offered to impeach the record. It cannot be so impeached. Van Etten v. Passumpsic Savings Bank, 79 Neb. 632, 113 N. W. 163.

We find no merit in this assignment.

Marshall also states that settlement was had by the giving of the check and the assignment of claims hereinbefore mentioned. It is obvious that his evidence is insufficient to establish the contentions made. We conclude that so far as the Exchange Elevator Company phase of this litigation is concerned, Marshall's assignments of error are without merit. The decree of the trial court insofar as it relates to the Exchange Elevator Company is affirmed.

The record presents the following situation regarding the Rottler judgment. One Ernest Fullner brought a foreclosure action against Louis A. Rottler and wife, Edwin A. Marshall and wife, and others. The decree was entered April 4, 1931. In the decree the court found that Rottler and Marshall were the owners of the real estate and that there was due $2,779.96 on the note secured by the mortgage. The court also found, on the answer of defendant Rottler, that he had paid the amount of $2,000 on the indebtedness on June 27, 1928. The trial court decreed that if the debt was not paid by Rottler and Marshall, the mortgaged premises should be sold, and directed the sheriff to offer for sale, first, the undivided one-half interest of Marshall, and, if not sold for sufficient to pay the debt, then to sell the whole of said premises.

Thereafter on March 18, 1932, the entire tract having been sold, the matter came on for consideration upon motion of Fullner for a deficiency judgment against both defendants, and upon motion of Rottler that any deficiency judgment be satisfied, first, out of the property of Barshall and, second, out of the property of Rottler. The court found that both Rottler and Marshall were personally liable on the note and were still liable, and entered a deficiency judgment against them for $2,023.61. It denied Rottler's motion that the judgment first be satisfied out of the property of Marshall.

On October 7, 1933, execution was issued on the judgment. The sheriff's return, dated October 23, 1933, shows the execution recalled by order of the sheriff. It appears

that pursuant to the execution, the sheriff had levied on cattle of the judgment debtor Rottler. To secure a release of the cattle, Rottler paid Fullner $1,800 on October 21, 1933. By an instrument dated the same day Fullner assigned to Donald Rottler, the son of Louis A. Rottler, all his rights in and to the judgment. Thereafter on June 7, 1934, Fullner released of record all his right, title, and interest in and to the judgment. The assignment was filed in the case February 19, 1935. On the same day an execution was issued on this judgment and a levy made upon cattle owned by Marshall. Either Mr. or Mrs. Marshall made a payment to Louis Rottler and the property was released from the execution. Executions were issued and returned unsatisfied in June 1939 and March 1944 in Stanton County. A transcript was filed in Dodge County in 1944 and execution issued and returned unsatisfied.

Resisting the Rottler judgment in this action, Marshall answered that the judgment was a joint one against Louis A. Rottler and himself; that it was satisfied in full by the payment to the judgment creditor by Rottler; that Rottler so intended; that Fullner satisfied the judgment of record; that the assignment was executed after it was paid and satisfied of record and the assignment dated back; that Donald Rottler gave no consideration for the assignment; and that it was void and of no force and effect.

The decree of foreclosure was tantamount to a holding that as between the judgment debtors, the debt was primarily that of Marshall. Rottler's motion to have the deficiency satisfied first out of the property of Marshall evidently was an attempt to take advantage of the provisions of section 25-1544, R. S. 1943. That statute is conditioned upon a showing that one or more of the judgment debtors signed as surety or bail. It does not appear that such a showing was or could have been made. We have held that the purpose of the statute was to enlarge the legal rights of the surety by requiring the property of the principal to be first exhausted before levy on the property of the surety, where the latter has caused his relation to be certified when the

judgment is rendered, and not to take away or destroy the rights of the surety to be protected in his suretyship. Drexel v. Pusey, 57 Neb. 30, 77 N. W. 351. We are of the opinion that the refusal of the trial court to order the deficiency judgment satisfied, first, out of the property of Marshall, does not bar Rottler from asserting whatever rights he may have against Marshall, arising as a result of the subsequent payment to the judgment creditor.

The next step in this proceeding was the issuance of an execution on this judgment, the levy on property of Rottler and Rottler's payment on October 21, 1933, of $1,800 to Fullner, and Fullner's assignment of the judgment to Donald Rottler. There is some evidence from which it is argued that the assignment was made subsequent to the date of the payment and to the date of the assignment. We think it clearly established, both from the documentary and parol evidence, that this assignment was made and delivered on its date and as a part of the transaction then had. We think it also clear that the payment was made and received with the intention on the part of Fullner that its effect would be to satisfy Fullner, so that he would not hereafter seek collection against Rottler, and the assignment made with a like intention of keeping the judgment in force and effect as against Marshall for the benefit of Rottler. This intent is further demonstrated by the later issuance of the execution against Marshall and his payment upon the judgment to secure a release of the property upon which levy had been made.

It is obvious that the release of record by Fullner, subsequent to the assignment, of his right, title, and interest in the judgment did not change the situation of the parties to this litigation.

We then come to the question of the effect of what was done.

Marshall contends here that where a judgment is owing by two or more persons jointly, each primarily liable, and one of them pays it, the judgment is extinguished and cannot after such payment be kept alive by assignment to a

third person. Rottler contends that where one of two joint judgment debtors pays more than his equitable share of the debt and takes an assignment of the judgment in the name of a third person for the benefit of the paying debtor, the paying debtor may use the assigned judgement as an aid in enforcing contribution, and that this is the rule applicable here.

The rule is stated by a recognized authority as follows: "Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution (see § 1418) among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more *just* doctrine is found in the entire range of equity; * * * ." 2 Pomeroy, Equity Jurisprudence (5 ed.), § 411, p. 157. "Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given, between all those who are jointly, or jointly and severally, liable on contract or obligation in the nature of contract. The right, however, may be controlled or modified by express agreement among the co-sureties or debtors. The doctrine of contribution rests upon the maxim, Equality is equity (see §§ 405-412). Although contribution is based upon general considerations of justice, and not upon any

notion of an implied. promise, a jurisdiction at law has become well settled which is sufficient in all ordinary cases of suretyship or joint liability. The equitable jurisdiction still remains, and has some most important advantages. All the co-sureties and the principal debtor being parties to the equity suit, the liabilities of each and their exoneration by the principal debtor can be adjusted and established by a single decree. If one or more of the co-sureties are insolvent, the plaintiff can in equity obtain a proportionate increase of contribution from the others who are solvent. It seems, however, that the surety must first resort to the principal debtor; and that he can only compel contribution in equity when he has failed to obtain exoneration from the principal. Of course, there can be no such limitation to a contribution among joint debtors not sureties. There is no contribution among tort-feasors." 4 Pomeroy, Equity Jurisprudence (5 ed.), § 1418, p. 1071.

The rule likewise is stated: "Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct." And "The rule applies where two or more persons sign a note as makers for their joint benefit * * * ." Restatement of the Law, Restitution, § 81, p. 360. See, also, 10 C. J. S., Bills and Notes, § 37, p. 466. "Every joint debtor who has been compelled to pay more than his share of the common debt has the right of contribution from each of his codebtors." 18 C. J. S., Contribution, § 9, p. 12. See 13 C. J., Contribution, § 13, p. 826. We have stated the rule as follows: " * * * in equity a surety paying a judgment against himself and his principal is entitled to be subrogated to the rights of the original creditor, and to have the judgment assigned to him or to some one else for his benefit." Kramer v. Bankers Surety Co., 90 Neb. 301, 133 N. W. 427.

The rule as to the amount that can be recovered where

contribution is sought has been stated by the authorities. "A person who has discharged more than his proportionate share of a duty owed by himself and another, as to which neither of the two had a prior duty of performance, and who is entitled to contribution from the other under the rules stated in sections 81-84, is entitled to reimbursement, limited (a) to the proportionate amount of his net outlay properly expended * * *. A surety or other co-obligor becoming such without the fault of a co-obligor is entitled to no more by way of contribution than will put him on an equality of loss with others in view of his share of the obligation undertaken. This is true even though he obtains an assignment from the creditor * * *. In the first case he may be entitled to proportionate reimbursement only to the extent that payment to the creditor diminishes the debt of the other * * *." Restatement of the Law, Restitution, § 85, p. 375. "A party who has made a partial payment is not entitled to contribution, even though the others have paid nothing, until his own payment exceeds his proportionate share of the whole debt, and he is then entitled to collect a proportionate share only of the excess, from each party, the proportionate share in each case being determined by dividing the total sum in question among the number of solvent parties within the jurisdiction of the court." 5 Pomeroy, Equity Jurisprudence (2 ed.), § 2341, p. 5178. "This right of contribution is one which belongs to one of two or more joint obligors. It is a right which grows out of the relation of the parties to the contract. It is a right given to protect one of the joint obligors in the event he has been compelled to discharge the whole debt, or more than his proportionate part of the whole debt. The right of contribution is an individual and personal right. It grows out of what the individual himself does. It is a right which accrues to one or more individuals (out of the whole number bound) who pay the debt for which they are all bound. Each one paying is entitled to recover from the others the amount which he has paid in excess of his own proportionate part. His right to recover is dependent upon the excess which he himself

pays. In other words, the act is individual, and the right of contribution is individual. The right of contribution rests upon an implied contract to repay, which contract the law itself implies from the relationship of the parties." 2 Story, Equity Jurisprudence (14 ed.), § 648, p. 63.

Marshall relies upon four of our decisions: Potvin v. Meyers, 27 Neb. 749, 44 N. W. 25; Henry & Coatsworth Co. v. Halter, 58 Neb. 685, 79 N. W. 616; First National Bank of Plattsmouth v. Gibson, 60 Neb. 767, 84 N. W. 259; Ebel v. Stringer, 73 Neb. 249, 102 N. W. 466. They do not require a reversal of this judgment.

In Potvin v. Meyers, *supra,* judgment had been rendered against three defendants with no showing that they were other than principal defendants. Execution was issued. One of the defendants paid the judgment to the sheriff, by him it was paid to the clerk of the district court, and by him it was paid to the plaintiff. Thereafter the judgment was assigned to the paying defendant, who caused execution to be issued and proceedings were had in aid of execution. These were resisted on the ground that the judgment had been paid and satisfied. It was held that there was nothing which was the subject of assignment when the assignment was made. Suretyship was denied. Our opinion left open to the paying judgment debtor the right to maintain a proper action against the other judgment debtors in which the issue of principal and surety could be determined and for the money paid by him in satisfaction of the judgement.

In Henry & Coatsworth Co. v. Halter, *supra,* the question decided was the validity of an execution sale under a judgment. The judgment debtor had furnished the money and sent a brother to pay it. It was paid to the attorneys of the judgment creditor. An assignment was then taken in the name of a third party. The judgment debtor " * * * thought it would be better to take the assignment in some other person's name so if any trouble would arise he would be in a position to clear the matter." No question of principal and surety or joint debtor was involved. In the opinion it was said: " * * * when payment is made by one who is primarily

liable, it operates as an absolute satisfaction although an assignment is made to a third person with the intention of keeping it alive. One cannot, except under special circumstances, become the assignee of a judgment against himself." The question comes as to what the writer of the opinion meant by "except under special circumstances." The answer is found in Booth v. Farmers and Mechanics National Bank, 74 N. Y. 228, cited by the writer of the opinion. There a member of a copartnership paid a judgment that was rendered upon a firm debt against the members of the firm. The court held: "Where one of several joint debtors pays the debt, his remedy against the others is confined to a claim for contribution, and where, as in the present case, the debt arises out of a partnership transaction, the amount, if any, to which the party paying is entitled as against the others necessarily depends upon the state of the partnership account. He cannot keep the paid claim, or any judgment thereon, alive and enforce it against the others, either in his own name or in that of any third party to whom he may cause it to be assigned, unless perhaps *under special circumstances* to the extent of the sum which may be found due to him from his co-partners on an accounting with them. * * * The payment of the debt by Flint to the bank therefore enured to the benefit of his copartners and satisfied the judgment against them, so that neither he, nor any party to whom he caused it to be assigned in consideration of such payment, could enforce it, at least without showing some equity entitling him to hold it as security for the sum due Flint for contribution, and in that event it could be enforced only to the extent of the sum shown to be thus due." (Emphasis supplied.)

In First National Bank of Plattsmouth v. Gibson, *supra*, a judgment had been paid by one of three judgment debtors. Thereafter the property was sold under execution on the judgment to a second judgment debtor, who in turn conveyed to his brother. The question was whether or not title passed so as to defeat a junior judgment. No question of equities between joint debtors, or principal and surety,

was presented. It there was said, on authority of the Henry & Coatsworth case that "It is a well settled proposition, *subject to some exceptions not necessary to be here noted,* that a judgment is extinguished when it is paid by one primarily liable for its satisfaction. It can not, when so paid, be kept alive even by assignment to a third person, as was done in this case." (Emphasis supplied.)

In Ebel v. Stringer, *supra,* a judgment against several joint debtors was paid by one of them. It was claimed that after payment it had been assigned to a third party, who sought to subject property to its payment. No question of rights of joint debtors as against each other or of principal and surety was presented. It was held that there was no competent proof of an assignment. Nevertheless, in the opinion it was said: "A judgment is extinguished when it is paid by one who is primarily liable for its satisfaction and it cannot, after such payment, be kept alive by assignment to a third person or corporation," citing Henry & Coatsworth Co. v. Halter, *supra,* and First National Bank of Plattsmouth v. Gibson, *supra.* The statement is obviously dictum, but in any event carries with it the exceptions noted in the authorities cited. In conclusion, we pointed out that the assignment, if made, was made some weeks after the judgment was paid and could not give new life to it.

In Orchard & Wilhelm Co. v. Sexson, 119 Neb. 370, 229 N. W. 17, we said: "It has long been a rule that where a judgment was rendered against two or more defendants, who were jointly liable, a payment of the judgment by one of the debtors satisfied and extinguished the judgment, and if a right to contribution existed it could be enforced only in an independent action brought for that purpose. This rule is not applicable where the judgment pronounced, pursuant to statutory authority, determines the rights of the defendants *inter se* as to subrogation and contribution, in the event one of them is compelled to pay more than his proportionate part of the judgment. In the latter case, payment of the judgment to plaintiff, or his assignee, by one of the defendants operates to extinguish the judgment only in so far as

it pertains to the rights of the judgment plaintiff. It does not operate to extinguish or satisfy the judgment in so far as it pertains to the adjudicated rights of defendants *inter se*. In fact, such a judgment is two-fold in character. It determines and adjudicates the rights between the plaintiff, on the one hand, and all the defendants, on the other. It also determines and adjudicates the rights of the several defendants as against each other. In such case, payment to the plaintiff by one of the defendants operates to extinguish the rights of plaintiff only. The judgment remains alive as a basis for the adjustment of the adjudicated rights of the defendants *inter se*." Marshall relies upon the statement therein that " * * * if a right to contribution existed it could be enforced only in an independent action brought for that purpose" and contends that it bars the relief which Rottler seeks here.

In Nelson v. Webster, 72 Neb. 332, 100 N. W. 411, cited in Orchard & Wilhelm Co. v. Sexson, *supra,* we had a case where a judgment was taken against three persons, the judgment reciting that one of the defendants had signed the note as a surety. The surety paid the judgment and took an assignment to himself. Execution was issued and levied upon property of the principal. Replevin was brought. It there was contended that the judgment had been satisfied and extinguished and was no longer valid against anyone, and, second, that one of the several defendants could not become assignee of the judgment as against the other judgment debtors. It also was contended that, although the surety paying the judgment could have brought an action to be subrogated to the rights of the judgment creditor, yet he could not summarily acquire the rights by the assignment to enforce the judgment against his codefendants. It was held that the issue as to principal and surety had been determined before the payment of the judgment and its assignment. It further was held that the assignment had accomplished the same thing that could have been established in an action of subrogation.

In the instant case it had already been determined in the

foreclosure decree that as between Marshall and Rottler, the debt was that of Marshall. In the Nelson case the facts were those of principal and surety, and here those of joint debtors. As the above authorities state, the same rule applies to both factual relationships. Here it has been established without dispute that Rottler had paid his share of the principal debt prior to the decree; that his interest in the mortgaged real estate had been sold to satisfy the decree in part; and that he had paid $1,800 on the deficiency judgment when the assignment was made. Marshall, or Mrs. Marshall for him, subsequently paid $200 to Rottler. The relationship of joint debtors, the burden each carried to each other and the payments of each subsequently made, have been established here. In the instant case Marshall argues that "When Rottler paid the judgment he could have turned around and filed an action for contribution and there could have been a determination as to whether Rottler had anything coming from Marshall and as to whether he had paid more of their joint indebtedness than Marshall did," but that this matter had never been determined and was not an issue.

The same contention was disposed of in Nelson v. Webster, *supra.* There it was held that "When the person seeking payment has conclusively shown that he was the surety (here a joint debtor who had paid his proportionate share of the debt), that he paid the full amount of the debt (here a substantial part of the balance), and that the judgment against the defendant had been assigned to him, there is nothing further necessary to be proved to authorize him to compel payment." It was held that no good could result from compelling the paying debtor first to maintain a separate suit to establish that which he had already established. So here, all that could be done in another action has already been done. Marshall "has had his day in court and should pay the debt without further litigation." The opinions in Nelson v. Webster, *supra,* and Orchard & Wilhelm. Co. v. Sexson, *supra,* are not in conflict.

Apparently the trial court determined that Marshall

should pay the entire amount of the deficiency judgment, less the $200, together with interest at ten percent. In this we think the trial court erred. Rottler does not seek here to recover any excess paid prior to the deficiency judgment. Marshall is obligated to pay that which Rottler paid for him, to wit, the $1,800. That debt does not carry the mortgage contract rate of interest, it carries the legal rate of interest at six percent. § 45-102, R. S. 1943. Marshall is entitled to credit for the $200 which was paid as a result of the execution on his property. We are unable to determine from the record just when that payment was made, and hence cannot calculate here the exact amount Marshall should pay. The matter is here for trial de novo. We are called upon to render the judgment that should have been rendered by the trial court or to remand the cause for such a judgment. Accordingly, the cause is remanded with directions to take evidence, if necessary, to determine when the $200 payment was made and to render judgment in accord with this opinion.

Marshall further contends that Louis Rottler is the real party in interest, and that this action cannot be prosecuted in the name of the assignee, Donald Rottler. We see no merit in this assignment. Such a procedure is authorized by section 25-304, R. S. 1943. See Meeker v. Waldron, 62 Neb. 689, 87 N. W. 539.

The judgment of the trial court is affirmed insofar as it relates to the Exchange Elevator Company matter; it is reversed and the cause remanded with directions insofar as it relates to the Rottler matter.

AFFIRMED IN PART,
REVERSED IN PART.

PAINE, J., participating on briefs.