Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/24/2019 09:06 AM CDT

- 574 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

Ralston Investment Group, Inc., a Nebraska
corporation, et al., appellants, v.
David Wenck, appellee.

___ N.W.2d ___

Filed September 17, 2019.    No. A-18-718.

1. **Trial: Witnesses.** In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

2. **Judgments: Appeal and Error.** In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

3. ____: ____. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

4. ____: ____. An appellate court independently reviews questions of law decided by a lower court.

5. **Contracts: Parties: Intent.** A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement.

6. **Contracts.** It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements.

7. **Guaranty: Promissory Notes: Contribution.** A guarantor of a promissory note who has made payment may seek contribution from a coguarantor for that party's proportionate share of the obligation.

8. **Tort-feasors: Liability: Contribution: Compromise and Settlement.** A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement.

9. ____: ____: ____: ____. In order to recover on a claim for contribution among joint tort-feasors, the following elements must be shown:

- 575 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

(1) There must be a common liability among the party seeking contribution and the parties from whom contribution is sought; (2) the party seeking contribution must have paid more than its pro rata share of the common liability; (3) the party seeking contribution must have extinguished the liability of the parties from whom contribution is sought; and (4) if such liability was extinguished by settlement, the amount paid in settlement must be reasonable.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Benjamin M. Belmont, Sean D. Cuddigan, Wm. Oliver Jenkins, and Jake Houlihan, Senior Certified Law Student, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellants.

Travis W. Tettenborn and Mark A. Grimes, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Ralston Investment Group, Inc. (RIG), and three of its shareholders, James Linhart, Alan Bennett, and Kevin Hitzemann, sued shareholder David Wenck for breach of contract after he failed to contribute capital to RIG and for contribution to reimburse them for allegedly paying more than their proportional share of guaranteed debt to American National Bank (ANB). The court found for Wenck on both counts, and RIG, Linhart, Bennett, and Hitzemann (collectively Appellants) appeal.

## STATEMENT OF FACTS

In January 2004, Linhart, Bennett, Hitzemann, Steve Strong, and Wenck formed RIG, a Nebraska corporation, to build and operate a gas station and convenience store. Linhart, Bennett, Strong, Hitzemann, and Wenck contributed capital to RIG and received stock ownership interests in the following amounts and proportions:

- 576 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

| Investor | Contribution | Ownership Interest |
|---|---|---|
| Linhart | $120,000 | 30% |
| Bennett | $120,000 | 30% |
| Strong | $ 80,000 | 20% |
| Hitzemann | $ 40,000 | 10% |
| Wenck | $ 40,000 | 10% |

The shareholders did not execute bylaws or a shareholder agreement.

After the construction of the gas station and convenience store was completed in early 2005, RIG borrowed $1,421,610 from ANB to provide operating cash for the business. RIG also obtained a $50,000 line of credit from ANB. The parties testified that each shareholder guaranteed the operating loan and line of credit at the rate of 125 percent of their ownership interest percentage in RIG, which equates to the amounts shown in the table below. These amounts were reflected in the written guaranty agreements received into evidence with the exception of those of Strong, whose written guaranties were not offered nor received into evidence, and Wenck's line of credit guaranty, which the parties testified could not be located:

| Investor | Amount Guaranteed on $1.4M Note | Amount Guaranteed on Line of Credit | Total Amount Guaranteed |
|---|---|---|---|
| Linhart | $533,103.75 | $18,750 | $551,853.75 |
| Bennett | $533,103.75 | $18,750 | $551,853.75 |
| Strong | $355,402.50 | $12,500 | $367,902.50 |
| Hitzemann | $177,701.25 | $ 6,250 | $183,951.25 |
| Wenck | $177,701.25 | $ 6,250 | $183,951.25 |

The written guaranty agreements specifically indicated that the respective shareholders unconditionally guaranteed to pay the indebtedness incurred by RIG owing to ANB up to the stated sum listed above, but do not reference a pro rata rate or basis upon which the guaranteed sums were determined.

In 2006, RIG experienced cash shortfalls. Linhart, Bennett, and Hitzemann testified that, in order to address RIG's cash

- 577 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

needs, in 2006, the parties met and orally agreed that when RIG needed additional cash, the parties would be obligated to contribute necessary cash to RIG in proportion to their ownership interests in RIG. In contrast, Wenck testified that the parties' oral agreement was to address RIG's capital needs on an ongoing basis, but that he never agreed to make ongoing, obligatory cash contributions to RIG in connection with all future requests for capital calls, or "cash calls." Instead, Wenck testified that, on a case-by-case basis, if RIG needed cash, he would attempt to contribute cash in proportion to his ownership interest if he could, but that he never agreed to be permanently obligated on all future cash calls. Wenck further testified that, in 2006, he separately met with his own counsel and was advised he was not legally obligated to make capital contributions on future cash calls but could do so on a voluntary basis.

The parties collectively agreed that they first agreed to contribute $100,000 to RIG in 2006 with each party, including Wenck, contributing proportionately to their ownership interests in RIG. The parties likewise agreed that all shareholders contributed, with the exception of Strong, who, in 2006, sold his ownership interest in RIG to Hitzemann and Wenck, with Hitzemann and Wenck each purchasing half of Strong's 20-percent interest in RIG. In connection with the purchase price for Strong's interest in RIG, instead of paying Strong, Hitzemann and Wenck each paid $10,000 of the purchase price to RIG to cover Strong's unpaid share of the capital contribution. The purchase agreement governing Strong's sale of his interest in RIG did not reference Strong's personal guaranty with ANB, nor did the agreement reference Hitzemann's or Wenck's assuming any of Strong's liabilities. The parties offered no evidence governing whether Strong's personal guaranties with ANB were extinguished as a part of the transaction.

RIG was never profitable for any significant length of time. Between 2006 and 2014, the shareholders made several more capital calls and Wenck contributed to some of them;

- 578 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

however, over the life of RIG, he was $60,264.51 short of contributing his proportional ownership interest in relation to Linhart, Bennett, and Hitzemann, who made capital contributions in accordance with their ownership interests in RIG. In June 2014, RIG sold the gas station and convenience store and the proceeds of the sale were applied toward paying the debt RIG owed to ANB.

On August 14, 2014, ANB sent a letter to the four then-current shareholders stating that the unpaid balance of RIG's two loans, after applying the net sale proceeds of the gas station and convenience store, was $828,479.47. Additionally, ANB advised that there was a prepayment penalty of $15,431.59 which ANB offered to waive if one or more of the guarantors voluntarily paid the balance. ANB stated it would prefer to make arrangements to satisfy the debt with the group rather than pursuing the matter individually; however, ANB also reminded the current shareholders of their maximum guaranteed obligations on RIG's then-current outstanding obligations to ANB and of ANB's right to pursue each individual up to the amount of their full personal guaranteed sums.

On September 18, 2014, ANB sent the four current shareholders a demand letter stating that RIG was in default and owed $848,343.53. On October 31, Wenck individually settled his guaranteed obligation to ANB in the amount of $80,000 by agreeing to make a $1,000 downpayment and by agreeing to make 79 monthly payments of $1,000 thereafter for the following 79 months. Under the terms of the settlement agreement, Wenck would not be fully released from his full guaranteed obligation to ANB until he made all 80 payments. The settlement agreement provided that should Wenck fail to make any required payment obligation, ANB reserved the right to terminate the agreement and pursue Wenck's full guaranteed obligation to ANB. At the time of trial, Wenck believed he had made roughly half of his 80 payments. The relevant portions of the settlement agreement will be set forth in the analysis portion of this opinion.

- 579 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

In November 2014, ANB brought an action against Appellants on the debt. The three shareholders made an initial tender payment of $773,788.09, which Hitzemann testified was made in order to stop interest from accruing. In December 2015, Linhart, Bennett, and Hitzemann settled the remainder of the debt for $44,000. The relevant portions of the settlement agreement will be set forth in the analysis portion of this opinion. The following is the total settlement amount each shareholder paid, or in Wenck's case, was to pay, to ANB:

| Shareholder | Amount Paid to ANB |
| --- | --- |
| Linhart | $316,918.42 |
| Bennett | $316,918.42 |
| Hitzemann | $183,951.25 |
| Wenck | $ 80,000.00 |

The record is unclear regarding the exact amount RIG owed to ANB at the time of the settlement agreement between ANB and Appellants or how much debt was contingently forgiven by ANB as part of the final settlement.

In July 2016, Appellants filed a complaint against Wenck seeking contribution from Wenck for allegedly overpaying their allocable share of guaranteed debt to ANB. The complaint also alleged that by failing to make capital contributions in proportion to his ownership interest, Wenck had breached a contract with RIG, and that Wenck owed RIG for his remaining share of the capital contributions.

The court held a bench trial on May 10 and 11, 2018, and found for Wenck on both counts. Regarding contribution, the court found that no party had paid more than their pro rata share of the original debt and that Linhart, Bennett, and Hitzemann's settlement with ANB had not extinguished Wenck's liability to ANB. Regarding the breach of contract claim, the court found that the terms of the alleged oral contract to contribute capital to RIG were not sufficiently specific to show a meeting of the minds and, alternatively, the alleged oral contract was unenforceable because it violated the statute of frauds. Accordingly, the court entered judgment for Wenck.

- 580 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

## ASSIGNMENTS OF ERROR

Appellants' assignments of error, combined and restated, are that the district court erred in denying their claims for breach of contract and for contribution.

## STANDARD OF REVIEW

[1-3] In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014). In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Hooper v. Freedom Fin. Group*, 280 Neb. 111, 784 N.W.2d 437 (2010). See, also, *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Black v. Brooks, supra*.

[4] An appellate court independently reviews questions of law decided by a lower court. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

## ANALYSIS

### Breach of Contract

Appellants contend that Wenck breached his contract by failing to make all capital contributions to RIG in proportion to his ownership interest in RIG when the other investors made capital contributions to RIG. Appellants' contract claim is based upon a meeting allegedly held in 2006 in which the shareholders discussed RIG's need for cash. Under Appellants' version of the agreement, a contract was formed during that 2006 meeting whereby the parties agreed to make future cash contributions in proportion to their respective ownership interests in RIG whenever the shareholders agreed RIG was

- 581 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

in need of cash. Appellants' theory of the case is based upon a single agreement stemming from a 2006 meeting and is to be distinguished from a claim that, from time to time, Wenck agreed to make specific capital contributions but failed to do so. Conversely, Wenck claims he agreed to a contribution in 2006, made that contribution, and agreed he would participate in future contributions if he was able, but never agreed to make all future cash contributions whenever cash was needed by RIG.

[5,6] To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Id*. It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. *MBH, Inc. v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007).

The trial court, in its role as fact finder, determined that there was insufficient evidence adduced to conclude that a contract which obligated the parties to contribute to all future cash calls was formed. As the trial court noted, Appellants did not provide any evidence of certain key terms of the alleged contract, including but not limited to, how the need for capital contributions was to be determined in the future. The question of whether a 2006 oral contract was formed by the parties was a question of fact. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013).

Here, Wenck's version of what took place during the 2006 meeting among the parties was certainly reasonable. Wenck testified that in connection with the then-current cash situation involving RIG, he separately consulted with his counsel

- 582 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

and learned that he was not legally obligated to make future cash contributions to RIG and that future contributions were voluntary. Wenck testified he had to borrow the initial $40,000 he invested in RIG and agreed that he would contribute in the future if he was financially able to do so, but that he did not, and could not, agree to make a blanket agreement to make all future cash contributions whenever RIG needed cash. There was likewise a sparse amount of evidence of what a cash call would look like, including but not limited to, whether cash calls were to be dictated by the board or the shareholders, what percentage vote was needed, or other important parameters that would typically be associated with raising cash for a business. The trial court was not clearly wrong in finding that Appellants failed to prove the terms or formula of an alleged 2006 oral contract to perpetually contribute funding to RIG. Thus, this assignment of error fails. Because we find Appellants failed to prove the formation of an alleged oral contract in 2006, we need not address the court's alternate finding that the alleged oral contract was unenforceable because it violated the statute of frauds.

## CONTRIBUTION

Appellants next argue that the district court erred in finding that they could not recover under their contribution cause of action. In so finding, the court first found that neither Linhart, Bennett, nor Hitzemann paid more than the amount stated in his personal guaranty to ANB in connection with their settlement with ANB and none paid more than their "pro-rata share of the initial guaranteed corporate debt, based on his ownership interest in RIG." The court held that "[b]ecause no individual shareholder paid more than his pro-rata share of the initial guaranteed corporate debt, none may seek contribution from any other." Second, the court found:

> [Appellants] have further failed to prove that [Wenck's] liability to ANB has been extinguished by their payments to ANB. [Wenck] settled his guaranty obligation to

- 583 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

ANB, and [Wenck] has yet to pay the settlement in full, and should [Wenck] default in his settlement agreement with ANB, there is nothing to stop ANB from seeking [Wenck's] total liability under his personal guaranty to ANB. None of [Wenck's] liability to ANB has been extinguished by any of [Appellants].

The Court therefore finds that [Appellants] have failed to prove their [contribution] cause of action of their Complaint.

Appellants argue that both of the court's findings are erroneous.

The concepts discussed by the court stem from pronouncements by the Nebraska Supreme Court in *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946); *Rodehorst v. Gartner*, 266 Neb. 842, 669 N.W.2d 679 (2003); and *Estate of Powell v. Montange*, 277 Neb. 846, 765 N.W.2d 496 (2009). In *Exchange Elevator Company v. Marshall, supra*, the Nebraska Supreme Court outlined the general rule of contribution involving joint debtors. The Supreme Court held:

The rule likewise is stated: "Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct." And "The rule applies where two or more persons sign a note as makers for their joint benefit . . . ." Restatement of the Law, Restitution, § 81, p. 360. See, also, 10 C. J. S., Bills and Notes, § 37, p. 466. "Every joint debtor who has been compelled to pay more than his share of the common debt has the right of contribution from each of his codebtors." 18 C. J. S., Contribution, § 9, p. 12. See, 13 C. J., Contribution, § 13, p. 826. We have stated the rule as follows: ". . . in equity a surety paying a judgment against himself and his principal is entitled to be subrogated to the rights of the original creditor, and to

- 584 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

have the judgment assigned to him or to some one else for his benefit." Kramer v. Bankers' Surety Co., 90 Neb. 301, 133 N.W. 427.

The rule as to the amount that can be recovered where contribution is sought has been stated by the authorities. "A person who has discharged more than his proportionate share of a duty owed by himself and another, as to which neither of the two had a prior duty of performance, and who is entitled to contribution from the other under the rules stated in sections 81-84, is entitled to reimbursement, limited (a) to the proportionate amount of his net outlay properly expended . . . . A surety or other co-obligor becoming such without the fault of a co-obligor is entitled to no more by way of contribution than will put him on an equality of loss with others in view of his share of the obligation undertaken. This is true even though he obtains an assignment from the creditor . . . . In the first case he may be entitled to proportionate reimbursement only to the extent that payment to the creditor diminishes the debt of the other . . . ." Restatement of the Law, Restitution, § 85, p. 375. "A party who has made a partial payment is not entitled to contribution, even though the others have paid nothing, until his own payment exceeds his proportionate share of the whole debt, and he is then entitled to collect a proportionate share only of the excess, from each party, the proportionate share in each case being determined by dividing the total sum in question among the number of solvent parties within the jurisdiction of the court." 5 Pomeroy, Equity Jurisprudence (2 ed.), § 2341, p. 5178. "This right of contribution is one which belongs to one of two or more joint obligors. It is a right which grows out of the relation of the parties to the contract. It is a right given to protect one of the joint obligors in the event he has been compelled to discharge the whole debt, or more than his proportionate part of the

- 585 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

whole debt. The right of contribution is an individual and personal right. It grows out of what the individual himself does. It is a right which accrues to one or more individuals (out of the whole number bound) who pay the debt for which they are all bound. Each one paying is entitled to recover from the others the amount which he has paid in excess of his own proportionate part. His right to recover is dependent upon the excess which he himself pays. In other words, the act is individual, and the right of contribution is individual. The right of contribution rests upon an implied contract to repay, which contract the law itself implies from the relationship of the parties." 2 Story, Equity Jurisprudence (14 ed.), § 648, p. 63.

*Exchange Elevator Co. v. Marshall*, 147 Neb. 48, 60-62, 22 N.W.2d 403, 410-11 (1946).

[7] In *Rodehorst v. Gartner*, 266 Neb. 842, 848-50, 669 N.W.2d 679, 685 (2003), the Nebraska Supreme Court explained:

A guaranty is a collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance. *Northern Bank v. Dowd, supra*; *Chiles, Heider & Co. v. Pawnee Meadows*, 217 Neb. 315, 350 N.W.2d 1 (1984). . . .

. . . In *Mandolfo v. Chudy, supra*, we held that under *Exchange Elevator Company v. Marshall*, 147 Neb. 48, 22 N.W.2d 403 (1946), a guarantor of a promissory note who had made payment could seek contribution from a coguarantor for that party's proportionate share of the obligation.

[8,9] In further defining the right of contribution, albeit in the context of joint tort-feasors, the Nebraska Supreme Court stated in *Estate of Powell v. Montange*, 277 Neb. 846, 851, 765 N.W.2d 496, 500-01 (2009):

- 586 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

Although this court has recognized a right of contri-
bution among joint tort-feasors who share a common
liability, we have not specifically addressed whether a
tort-feasor who enters into a settlement with the claimant
can recover contribution from another tort-feasor whose
liability for the injury or wrongful death is not extin-
guished by the settlement.

Noting that the Nebraska Legislature had not established rules
of contribution among joint tort-feasors, the court in *Estate
of Powell* analyzed provisions from the Uniform Contribution
Among Tortfeasors Act (UCATA), 12 U.L.A. § 1 et seq. (2008),
or versions of the UCATA adopted in a number of states. In
doing so, the court in *Estate of Powell* stated that in addition to
the UCATA corresponding with the Nebraska Supreme Court's
general recognition of a right to contribution,

the UCATA also places limits on the right of contribu-
tion. Only a tort-feasor who has paid more than his or her
pro rata share of the common liability may seek contribu-
tion, and recovery is limited to the amount paid in excess
of his or her pro rata share. No tort-feasor is compelled to
make contribution beyond his or her own pro rata share
of the entire liability. UCATA § 1(b), 12 U.L.A. 201.
This also corresponds with our requirement set forth in
*Royal Indemnity*.

The right of contribution is not available in all instances
or circumstances. The UCATA places restrictions on con-
tribution if a settlement has been entered into. "A tortfea-
sor who enters into a settlement with a claimant is not
entitled to recover contribution from another tortfeasor
whose liability for the injury or wrongful death is not
extinguished by the settlement nor in respect to any
amount paid in a settlement which is in excess of what
was reasonable." UCATA § 1(d), 12 U.L.A. at 202.

277 Neb. at 851-52, 765 N.W.2d at 501. After reviewing this
and other authorities, the court ultimately held:

We now hold that in order to recover on a claim
for contribution among joint tort-feasors, the following

- 587 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

elements must be shown: (1) There must be a common liability among the party seeking contribution and the parties from whom contribution is sought; (2) the party seeking contribution must have paid more than its pro rata share of the common liability; (3) the party seeking contribution must have extinguished the liability of the parties from whom contribution is sought; and (4) if such liability was extinguished by settlement, the amount paid in settlement must be reasonable.

*Id.* at 855-56, 765 N.W.2d at 504.

Although the court in *Estate of Powell* defined these elements in connection with claims of contribution among joint tort-feasors, the principles apply equally to claims of contribution among codebtors. But applying those principles here has led to confusion among the litigants. Although both Wenck and Appellants recognize that a party cannot pursue contribution until he or she has paid more than his or her "pro rata share of the common liability," there is disagreement on how that applies in the context of coguarantors. Where, as here, the coguarantors guaranteed a specific amount of the original underlying debt, the questions become: What is their pro rata share of the common liability? Is their pro rata share a percentage of their personally guaranteed amount in relation to the total personally guaranteed debt of all guarantors? Is their pro rata share their percentage ownership in the corporation? Is the "common liability" the original debt, the debt obligation remaining on the original debt, or the settlement amount when the common liability is extinguished by settlement? How are these issues to be resolved when the parties do not have a separate agreement allocating these rights and obligations among them? The parties spend a significant amount of time in their briefs arguing for different application of these principles; however, we need not address those arguments here, because we find that on this record, the parties seeking contribution failed to extinguish the liability of Wenck, the party from whom contribution was sought.

- 588 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

The parties' original guaranties were for the following amounts:

|  | Original $1,421,610 Debt: Amount Personally Guaranteed | $50,000 Line of Credit: Amount Personally Guaranteed | Percent in Relation to Guarantors | Percent in Relation to Original Debt |
|---|---|---|---|---|
| Linhart | $ 533,103.75 | $18,750 | 30% | 37.5% |
| Bennett | 533,103.75 | 18,750 | 30% | 37.5% |
| Strong | 355,402.50 | 12,500 | 20% | 25.0% |
| Hitzemann | 177,701.25 | 6,250 | 10% | 12.5% |
| Wenck | 177,701.25 | 6,250 | 10% | 12.5% |
| Amount Guaranteed | $1,777,012.50 | $62,500 | 100% | 125.0% |

In formulating this summary, we first note that Strong's personal guaranty was not made part of the record, and we list his personally guaranteed dollar amount based upon unrefuted oral testimony that he personally guaranteed 125 percent of his 20-percent interest in relation to the original corporate debt of $1,421,610 and the line of credit of $50,000. Accordingly, although each original investor guaranteed a higher percentage interest in the original corporate debt and the line of credit than their ownership percentage interest in RIG, their personal guaranties in relation to each other were the same as their ownership interest in RIG. We next note that the record is devoid of what happened to Strong's guaranty when he sold his ownership interest to Hitzemann and Wenck in 2006. Although Hitzemann and Wenck each purchased half of Strong's 20-percent ownership interest in RIG, neither assumed Strong's debt obligations, and the record is completely silent as to whether Strong remained a guarantor to ANB following the sale of his ownership interest to Hitzemann and Wenck.

Following the sale of Strong's ownership interest, and after the business was sold and the proceeds applied to the outstanding corporate debt, there remained a deficiency on the corporate debt which ANB desired to pursue. In August 2014,

- 589 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

ANB sent a letter to Linhart, Bennett, Hitzemann, and Wenck, but not Strong, stating that the then-unpaid balance of RIG's two loans, after application of the net sale proceeds of the collateral, was $828,479.47, which sum did not include a prepayment penalty of $15,431.59. In the letter, ANB stated it would prefer to make arrangements to satisfy the debt as a group rather than pursuing the matter individually, but the letter reminded the group of their maximum guaranteed individual amounts and ANB's right to pursue each individual up to the amount of his full personal guaranty.

In September 2014, the group received a demand letter requesting the then-outstanding balance of $848,343.53. Subsequent to that letter, Wenck settled with ANB for the sum of $80,000 subject to a payment plan to be discussed below.

On November 14, 2014, ANB filed a lawsuit against Appellants for $871,334. Linhart, Bennett, and Hitzemann made a tender payment of $773,788.09 in order to reduce accruing interest. One year later, in December 2015, Appellants settled the lawsuit for another $44,000, for a total of $817,778.09. Between the two payments, Linhart and Bennett each contributed $316,918.42 and Hitzemann contributed $183,951.25 toward the settlement. In July 2016, Linhart, Bennett, and Hitzemann filed a complaint against Wenck seeking contribution from Wenck in the amount of $99,557.61.

Critical to our analysis here are the terms of ANB's settlements with Wenck and Appellants. Under the terms of ANB's settlement with Wenck, Wenck was to pay $1,000 upon execution of the agreement and make 79 consecutive monthly payments of $1,000 each, commencing December 1, 2014. Wenck's $80,000 settlement was less than his guaranteed sum to ANB of $183,951. Notably, the settlement agreement stated:

> 3. **Release of Wenck**. Upon receipt of the total sum of $80,000.00, Lender will fully and finally release, acquit and forever discharge Wenck from all claims, liabilities, damages, actions, causes of actions of any kind and of

- 590 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

every nature whatsoever which Wenck ever had, or may have, whether known or unknown, regarding any indebtedness now owing by Wenck to Lender.

4. **Default procedures**.

. . . .

b. Consequences of Default. In the event that Wenck defaults in payment of the monthly installments as provided herein and fails to timely cure after notice any such defaults, Lender may in its sole discretion terminate this Agreement without further notice to Wenck. Upon termination, the obligations of Wenck on his guarantees of the RIG loans shall be fully reinstated; and Lender shall be entitled to immediately pursue recovery from Wenck by all lawful means, including an action at law on his Commercial Guaranty(s) of the loans of RIG, for the entire remaining outstanding balances unpaid on the RIG Loans, limited however to the extent of Wenck's aggregate guarantee liabilityof [sic] $183,951, as reduced by payments received by Lender under the terms of this Agreement.

As such, ANB reserved its right to pursue any deficiency in RIG's loan obligation up to Wenck's full guaranteed amount if he defaulted on any payment obligation.

In its December 2015 settlement agreement with Appellants, ANB further stated:

4. Upon timely receipt of payment of the Settlement Amount of $44,000.00 from the Majority Guarantors, the Bank, the Ralston Group, and Majority Guarantors shall execute a stipulated motion to dismiss the action filed in the District Court of Douglas County, Nebraska, and entitled, *American National Bank vs. Ralston Investment Group, Inc., Alan D. Bennett, James B. Linhart, and Kevin J. Hitzemann* (Case No. CI 14-8883), in the following manner:

a) All claims asserted by the Bank in its Second Amended Complaint against the Majority Guarantors,

- 591 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

together with all Counterclaims asserted by the Majority Guarantors shall be dismissed <u>with</u> prejudice; and

    b) All claims asserted by the Bank in its Second Amended Complaint against the Ralston Group shall be dismissed <u>without</u> prejudice, and the Bank shall retain the original Promissory Notes of the Ralston Group. The Bank expressly reserves and preserves all claims that it has against shareholder David Wenck under the Wenck Agreement and Commercial Guaranty of the Ralston Group Loans executed and delivered to the Bank by David Wenck.

The settlement agreement does not expressly state how much of the outstanding indebtedness was being released as part of the $44,000 settlement between ANB and Appellants, and it is not possible to calculate the exact number from the record before this court. That said, whatever the number, ANB expressed its right in both settlement agreements to pursue that contingently forgiven sum against Wenck up to the full amount of his guaranty if he ever defaulted on any of his payment obligations. At the time of trial, Wenck had completed only about half of his payments under the terms of his settlement agreement. Taken together, it is clear that Appellants, the parties seeking contribution, failed to extinguish the liability of the party from whom contribution was sought. Thus, no matter how the parties' pro rata share of the common liability is calculated, Appellants failed to establish a critical element to recover on their claim of contribution. Following their settlement with Appellants, ANB reserved the right to pursue a claim against Wenck up to the full amount of his personal guaranty, and Wenck was not obligated to contribute beyond his pro rata share of the entire liability which remained possible here with ANB reserving its rights against him. See *Estate of Powell v. Montange*, 277 Neb. 846, 765 N.W.2d 496 (2009). Because Appellants failed to extinguish the liability of Wenck to ANB with their settlement, we hold the court did not err in denying Appellants their contribution claim.

- 592 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RALSTON INVESTMENT GROUP v. WENCK
Cite as 27 Neb. App. 574

## CONCLUSION

We hold that the district court was not clearly wrong in finding that there was no oral contract formed among the parties requiring them to fund all future capital contributions to RIG. We further hold that the district court did not err in finding that Appellants have no right of contribution against Wenck, because they did not extinguish Wenck's liability to ANB in connection with their settlement. Both assignments of error fail, and we affirm the order of the district court.

Affirmed.